GERSON ROSENSTOCK *vs.* LEONARD J. TORMEY.

*Purchase of Stock through a Broker — Principles Governing the Relation of a Stock Broker and his Customer — Evidence — Practice — Principal and Agent—Admissibility of Evidence.*

T, a stock broker, was ordered by H to buy one hundred shares of railroad stock, on the joint account of H, G. R and L. R.  According to the custom of trade, T wrote to his correspondents, brokers in New York, directing them to purchase, and they accordingly bought, and were paid by T therefor.  H and his confederates failed to pay T for the stock, he therefore after notice to them, and in accordance with the custom of the business, directed his correspondents to make sale in New York, which was accordingly done.  T then sued for the difference between the amount paid in the purchase and that realized from the sale.  HELD:

1st. The order for the purchase being general in its terms, not directing the purchase to be made in any particular place or mode, and not containing any restrictions as to price, T had the right to make the pur-

chase in New York through correspondents, brokers or sub-agents residing and doing business in that city.

2d. He must show, however, that the stock was actually purchased under his directions by his New York agents, at its fair market price, on the day of purchase, and that he actually paid the purchase money therefor; that he notified his principals of the purchase, and requested them to receive the stock and pay him the price he had paid for it, with reasonable commissions; that at the time of this notice, he was in condition to deliver the stock by having the stock, or other proper *indicia* of title, actually in hand, or in the hands of his agents; that, on the failure of his principals to receive the stock, he, after a reasonable time and notice to that effect to the principals, directed it to be sold; and that it was sold by his agents, either at public sale in market overt, or at a sale publicly and fairly made at the stock exchange, or a stock board, or a board of brokers, where such stocks are usually sold, at a fair market value on the day of sale. Having shown this, he is entitled to recover the amount, if any, of the resulting loss.

3d. In a transaction so conducted, there is nothing illegal or contrary to public policy; it is but the proper execution of a legitimate business order for the purchase of a valuable commodity.

4th. The usage or custom of the particular business of buying and selling stocks on orders, may be introduced in evidence for the purpose of showing the manner in which an order received. may be performed, but not to imply an authority to execute it in a mode which the law would regard as unreasonable.

5th. Stockbrokers cannot, by force of any such custom or usage, bind persons ordering the purchase of stock by a merely fictitious purchase or sale, such for instance as one not *bona fide* and actually made, but pretended to be effected by mere entries on books and accounts between the broker and his agent.

It is a settled rule of practice under which Courts permit evidence which is *per se* irrelevant to be given, on the assurance of counsel that it is to be followed up by proof of other facts and circumstances, material and competent, with which it may have an important connection, and if the assurance is not fulfilled, then, on application of the opposing counsel, to direct the jury, not to regard it. But this rule from its liability to abuse ought not to be enlarged, and should not be extended beyond express adjudications.

The declarations of an agent are not admissible to bind his principal under any circumstances until the agency *is first* clearly established.

R employed T, a stock broker, to purchase certain stock for him. T wrote to his correspondents in New York instructing them to make the pur-

chase, and they, by letter, informed him that the stock was purchased. HELD:

That the letters of T's correspondents to him are inadmissible to prove the purchase in a suit by T against R for the purchase money.

APPEAL from the Superior Court of Baltimore City.

The facts of the case are stated in the opinion of the Court.

In the course of the trial, the following exceptions were taken to the evidence and order of evidence:

*First Exception:* After the plaintiff had proved the order to purchase the stock in question; its purchase in New York, according to the regular course of business; the items in the account filed with the declaration, *with the credits thereon, &c.,* and the payment by the plaintiff of $12,850 to Dibble and Cambloss, as the purchase money of the stock, the defendants objected to the giving of said testimony, without producing some requisite to gratify the Statute of Frauds, and without proof of such purchase, by producing or proving that some transfer was made. The Court overruled the objection, and permitted the evidence to go to the jury. The defendants excepted.

*Second Exception:* This exception rests upon an objection to *the order* in which certain proof therein stated should be given. The Court overruled the objection, and the defendants excepted.

*Third Exception:* The plaintiff offered in evidence his letters to and from his correspondents in New York, shewing the statement of the purchase and sale of the stocks in question, and on the strength of which the plaintiff had laid out and expended the purchase money of the said stocks. The defendants objected to the introduction of said letters as proof of the purchase and sale. The Court overruled the objection, and the defendants excepted.

*Fourth Exception:* The plaintiff having proved by himself, that Hoflin gave the order to purchase the stock in question in the joint names of the defendants, in the presence of Gerson Rosenstock, who stood immediately behind Hoflin, " near

enough to have heard" the order;—by Hechtel, that he saw Rosenstock following Hoflin in on the occasion when the order was given;—by Hoflin, that he first gave the order to buy for J. Hoflin, but on going to the door and meeting Gerson and Louis, who each agreed to take a third, he immediately returned, and directed the stock to be ordered in their joint names;—by Hechtel, that the witness had asked Louis to settle the balance due on the purchase, and in reply, Louis had not denied the transaction or his interest in it, but said that "he had an interest in the purchase, but had no money, his brother Gerson had the money, and would pay for it." The Court was asked to "exclude all the statements of Hoflin, professing to have been made on account of the defendants, upon the ground that no proof had been given, although the plaintiff had then closed his case, of the said Hoflin being their agent in regard to the alleged purchase." This the Court refused to do, and the defendants excepted.

*Fifth Exception:* The plaintiff offered the following prayer:

If the jury believe from the evidence that the plaintiff laid out and expended in the purchase of one hundred shares of Illinois Central, for the defendants, at the instance and request of the defendants, the sum of $12,825, and that the amount so expended has not been refunded to him, then the said plaintiff is entitled to recover against the defendants Gerson and Lewis Rosenstock, whatever sum of money may yet remain unpaid of said sum, so laid out and expended; provided the jury shall find that the said stock was purchased according to the usual course of dealing in the purchase and sale of stocks, and shall also find that the sale thereof as made by direction of the plaintiff, as offered in evidence, was also made according to the usual course of dealing in the purchase and sale of stocks, and after due notice to the defendants.

The defendants asked the Court to instruct the jury as follows:

1. That before the plaintiff can recover, the jury must find that the one hundred shares of Illinois Central Stock were

bought for the joint account of the three defendants, named in the declaration.

2. That there is no evidence in this cause sufficient to gratify the requirements of the Statute of Frauds.

3. That if the jury shall find that said stock was purchased as alleged by the plaintiff, that then the defendants were in no default, unless the stock was tendered to them or either of them, with a demand of payment therefor and a refusal to comply; and if they shall find such default and refusal, then said plaintiff had no right to re-sell said stock, save at public sale, or at a public stock board, and of which such sale there is no evidence.

4. That if the jury shall find from the evidence that the defendants, Gerson and Louis Rosenstock, agreed to buy of Nathan Hoflin, respectively, thirty-three shares of said stock, then there is no privity of contract between them and the plaintiff, and in that event the plaintiff cannot recover.

5. That there is no sufficient legal evidence that the said one hundred shares of Illinois Central Stock were ever purchased as pretended, and that before the plaintiff can recover, he must give such evidence that the same was so purchased.

6. That there is no evidence in this cause to show that the plaintiff ever paid, laid out or expended, the sum alleged, or any part thereof, or any sum whatever on behalf of the defendants, or either or any of them, as alleged in the declaration.

The Court granted the plaintiff's prayer, and the first and fourth prayers of the defendants, but rejected the others. To the granting of the plaintiff's prayer, and to the rejection of their second, third, fifth and sixth prayers, the defendants excepted, and the verdict and judgment being for the plaintiff, the present appeal was taken.

The cause was argued before STEWART, MAULSBY, MILLER and ALVEY, J.

*Wm. H. Dawson* and *George H. Williams*, for the appellant.

Contracts for the sale of stocks are within the Statute of Frauds, and must be proved as required by statute. *Colvin vs. Williams,* 3 *H. & J.,* 38; *Baldwin vs. Williams,* 3 *Metcalf,* 365.

Before the actings and doings of an alleged agent can be given in evidence, some proof of his agency must be first given. *Worthington vs. Savage Co.,* 1 *Gill, .*284; *Marshall vs. Haney,* 4 *Md.,* 511; *Atwell vs. Miller,* 11 *Md.,* 359.

The private letters of the plaintiff to Dibble & Cambloss, and their replies, and the recitals respectively contained therein, were not evidence as against the defendants for any purpose, and certainly not proof of sales or purchases of stock, nor even proof of its existence. *Langhorn vs. Allnutt,* 4 *Taunton,* 517.

The prayer of the plaintiff should not have been granted, because—

1st. There was no evidence on which the jury could find a joint request to purchase on joint account.

2d. No proof that any stock was ever bought or sold in fact. No proof that Dibble & Cambloss (as vendors, or as agents of vendors, if they were such) ever tendered the stock. No proof, in fact, that any such stock ever existed.

3d. No proof that any money was ever demanded of Tormey by anybody, and so the pretended payment, if ever made, for aught that appears, was purely voluntary.

4th. No proof of any usage or custom, that an agent can fulfil contracts of his principal before *somebody* asks him so to do, or that an agent can notify his employer to fulfil some contract he has made for him, without demand being made by the other party to the contract, and without proof that the agent was responsible for its performance. *Turner vs. Egerton,* 1 *Gill & J.,* 433; *Mayor, &c., vs. Hughes,* 1 *Gill & J.,* 497.

5th. No proof here that any of the defendants solicited the plaintiff to withhold their names as purchasers, and so make himself responsible for their contract.

The rejected prayers of the defendants should have been granted, for the reasons assigned for not granting the plaintiff's prayer.

1st. Because there was no proof to satisfy the Statute of Frauds.

2d. Because that there was no refusal on any order, but even if there was default, a re-sale should not have been made, save at a public place, after notice.

3d. And that there was neither evidence of the purchase of said stock, nor that the plaintiff ever laid out or expended a dollar, as alleged.

*Orville Horwitz*, for the appellee.

The Court was right in admitting the testimony contained in the first bill of exceptions.

This action was not instituted to recover the purchase money of one hundred shares of Illinois Central, by the vendor against the vendee. In a case of that character, it might possibly be necessary to show a sale within the Statute, and without such proof, the vendor might have no claim. In this State, in an old case, (*Colvin vs. Williams,* 3 *H. & J.,* 38,) the Court of Appeals, it is true, have said that the sale of bank stock was within the Statute, but even in that case, it would seem to have been so said more for the purpose of showing that the purchase and sale-note of the broker was binding on the defendant, than for any other purpose. In England and in this country, in all the modern cases, the distinction is taken between bank shares and railway shares, and it is held that the sale of railway shares does not come within the Statute. 11 *Ad. & Ellis,* 205; 16 *M. & W.,* 66; 12 *Simons,* 189; 3 *C. B.,* 249.

But in this case, the action is brought to recover the balance of a sum of money expended at the instance and request of the defendants by the plaintiff, in the due course of business, and according to the custom of that business. The plaintiff was directed to order one hundred shares of a cer-

tain stock for the defendants. He immediately ordered it, and on being notified of its purchase, according to the course of trade, he sent forward his money to pay for it. From that moment, having followed the custom of the business, he was a creditor of the defendants to the amount advanced for them. He had the right to sue them for money paid by the plaintiff for the defendants at their request.

The ruling of the Court in the second bill of exceptions, is in accordance with a series of decisions in this Court, and the case of *Atwell vs. Miller* 11 *Md.*, 359, relied on, does not interfere with this view of the law in Maryland. *Davis vs. Calvert*, 5 *G. & J.*, 304; *Haney vs. Marshall*, 9 *Md.*, 194; *Marshall vs. Haney*, 4 *Md.*, 510; *Crawford's Adm'r vs. Beall's Ex'r*, 21 *Md.*, 232.

The Court was also right in its ruling under the third bill of exceptions.

1st. It was unnecessary to prove an absolute purchase of sale.

2d. It was evidence of the only purchase and sale required by the nature of the transaction.

There was evidence not only tending to show the agency of Hoflin, but proving it beyond a reasonable doubt. *Morrison vs. Whiteside*, 17 *Md.*, 459.

The Court was right in granting the plaintiff's prayer, and in refusing the defendants' second, third, fifth and sixth prayers.

The second prayer of the defendants was granted by the Court as applicable to the count for goods sold and delivered, but as to the other counts, it was considered inapplicable, and rejected, as this action was not brought to enforce the sale. The same reasoning applies to the third prayer.

As to the fifth prayer, there is abundant evidence to show that so far as was required by the plaintiff for the purpose of justifying him in expending the money, there was a purchase according to the custom of the trade. As to the sixth prayer, the evidence was abundant.

Rosenstock *vs.* Tormey.

MILLER, J., delivered the opinion of the Court.

This action was brought by the appellee, against the appellant and Louis Rosenstock and Jacob Hoflin jointly. The latter was returned *non est*, and the case proceeded against the other two. The declaration contains the common counts in *assumpsit*, to which the general issue was pleaded. The cause of action, according to the testimony offered by the plaintiff, arose thus : The plaintiff was a stock broker, doing business in the city of Baltimore, and on the 4th of October, 1866, Nathan Hoflin, who, for some time, had been dealing with him in a similar way, under the name of J. Hoflin, came to the plaintiff's office and ordered him to buy one hundred shares of Illinois Central railroad stock on the joint account of J. Hoflin and his two co-defendants. The plaintiff immediately, and, as he states, according to the course of trade and the regular custom of the business, wrote to his correspondents, Dibble & Cambloss, brokers in New York city, directing them to purchase, and they accordingly bought the stock at $128 per share, and he paid them the purchase money ($12,825) therefor. The defendants failed to pay him; and subsequently, on the 16th of April, 1867, after notice to the defendants, and according, also, to the due course of trade and the custom of the particular business, he directed Dibble & Camblos to sell the stock in New York, and it was there sold by them and brought but $11,400. The plaintiff now seeks to recover the difference between the amount thus paid in the purchase and that realized from the sale of the stock.

Before examining the questions raised by the exceptions, we deem it proper to state generally the legal relations, duties and obligations of the parties growing out of this order, and what was necessary to be done in its execution, and the subsequent sale of the stock, to entitle the plaintiff to recover under the pleadings in this case. Assuming, for the present, that Hoflin was duly authorized to give the order for and on behalf of the defendants, the plaintiff thereby became and was constituted their agent to execute it, and if, by reason of

its due execution, he expended money and incurred loss, he can recover it back from his principals under the count for money paid by him for them at their request. This is the sole count in the declaration relevant to the case as now presented, and only by sustaining that count can a recovery be had. The order is general in its terms not directing the purchase to be made in any particular place or mode, and not containing any restrictions as to price. We are, therefore, of opinion the plaintiff had the right to make the purchase, as he alleges he did, in New York, through correspondents, brokers or sub-agents, residing and doing business in that city. He must show, however, that the stock was actually purchased under his directions, by his New York agents, at its fair market price, on the day of purchase, and that he actually paid the purchase money therefor. Having thus made the purchase and expended his money, it was his duty to notify his principals of the fact, and request them to receive the stock and pay him the price he had paid for it, with usual and reasonable commissions for making the purchase. At the time of this notice, he must show he was in a condition to deliver or transfer the stock by having the certificates, or other proper *indicia* of title actually in hand, or in the hands of his New York agents, ready to be delivered or transferred to the defendants. Upon receiving this notice, it was the duty of the defendants to pay for and receive the stock, and on their failure to do so, the plaintiff had, in our judgment, the clear right after a reasonable time, and after giving notice to that effect to the defendants to direct it to be sold in New York, and upon showing, by legal and competent proof, that it was actually sold by his agents, either at public sale in market overt, or at a sale publicly and fairly made at the stock exchange or stock board, or a brokers' board, where such stocks are usually sold, at its fair market value, on the day of sale, he is entitled to recover from the defendants the amount, if any, of the resulting loss. In a transaction so conducted and carried out, we discover nothing

illegal or contrary to public policy; it is but the proper execution of a legitimate business order for the purchase of a valuable commodity, a common article of sale in the market, out of which legal rights and obligations arise which Courts of Justice will sanction and enforce.

Usage and custom of trade and business have been relied on by the plaintiff, who, in his testimony, says that in this transaction he had done all that was usual and customary in the purchase and sale of stocks, and had followed therein the due course of trade and the custom of the particular business of buying and selling stocks on orders. In a recent case decided by the Court of Exchequer, in 1869, (*Maxted vs. Paine*, 4 *Law Reports, Court of Exch.*, 210,) some very forcible and pertinent observations on the subject of usages of the Stock Exchange were made by BARON CLEASLY. "I do not wish," says he, "to be understood as expressing an opinion that the plaintiff would be bound by any usage which a Court of Law would consider unreasonable. I think, on the contrary, he would not, unless he had actual notice when he authorized the contract to be made, of the particular usage. A man may, of course, if he thinks proper make a contract with any stipulations in it which are not unlawful, as for instance, that he will not enforce it without the authority of some particular officer or committee; but such a usage would not; I think, bind a person having no connection with the Stock Exchange and no actual knowledge of its usages, simply because he employed a stock-broker, to contract for him even though it was within the authority of the broker to make the contract on the Stock Exchange. It is true the jobber contracts with the broker according to the usages of the Stock Exchange, but if he knew and he generally does know that the broker was contracting for an outside principal, then he could not say as against that outside principal the contract is an act which according to our usages cannot be enforced. It seems to me that in the proper view it is a question of principal and agent, and what is the agent's authority. If the principal forbids

the broker to bargain for him according to the peculiar usages of the Stock Exchange, and limits his authority to specified contracts, the broker could not bind him to a contract to be performed according to those usages. But if he does not limit his authority then there is an implied authority to deal according to the usages of the Stock Exchange. But this, like other implied authorities, would be limited to such usages as are not unreasonable. Being implied by law it is in that way limited by the law; the law does not imply a contract or authority with terms which it regards as unreasonable. The members of the Stock Exchange if they enter into ordinary contracts with strangers, cannot by their usages make the law inapplicable to them; rather the law as superior must apply to them and it recognises the usages as modifying the authority but only so far as are reasonable. The contract having been made both parties are bound by it, not by the usage of the Stock Exchange, but by the power of the common law, and the usage of the Stock Exchange is properly introduced for the purpose of showing the manner in which the contract may be performed." So, in the case before us, the usage or custom of the particular business of buying and selling stocks on orders, in which the plaintiff was engaged may be properly introduced for the purpose of showing the manner in which the order he received from the defendants may be performed, but not to imply an authority to execute it in a mode which the law would regard as unreasonable. The order is given to a stock-broker to purchase certain shares of a particular stock by parties not shown to have had actual knowledge of any peculiar usage or custom of his business, and whilst the law will allow custom and usage to regulate its execution in the reasonable mode we have indicated, it will not permit the defendants, by the force of any such custom or usage, to be bound by a merely fictitious purchase or sale, such for instance as one not *bona fide* and actually made, but pretended to be effected by mere entries upon books and accounts between the plaintiff and his New York agents. We now proceed to consider the questions raised by the exceptions.

1st. It is quite unnecessary to decide in this case whether contracts for the sale of railway shares are within the Statute of Frauds, and must be proved as required by that Statute, because the plaintiff's case does not rest upon the enforcement of any such contract, or upon the count for goods sold and delivered, but upon the fact that he, as their agent, had expended money upon the defendants' order and at their special instance and request. The Court was therefore right in permitting the evidence objected to in the first exception to go to the jury under the fifth count of the declaration and the defendants have no ground of complaint that their second prayer was confined to the count for goods sold and delivered.

2d. By the second exception a question, not vital to this case, but important as a matter of practice, is presented. The plaintiff proved that, when Hoflin gave the order, one of the defendants, the appellant, was standing immediately behind, near enough to hear when he instructed the stock to be charged to the three defendants. To the admission of this or any other statement of Hoflin to bind them, the defendants objected, upon the ground that proof, constituting him their agent, with authority to bind them, should be first given before such statements were admissible or receivable in evidence. But the Court admitted the statement, upon the undertaking and offer of the plaintiff's counsel to follow it up with the requisite proof of such agency. It has been held, in a series of decisions by this Court, that evidence relevant and pertinent to the issue is to be admitted without reference to the order of its production; the particular order in which a party may choose to introduce his proof being a matter for his exclusive consideration. Whatever inconvenience this practice may sometimes occasion, it has become too firmly settled to be now disturbed. It is also a settled rule of practice, where evidence which, *per se,* may be irrelevant, but which may become material if followed up by proof of other circumstances and facts, material and competent, with which it may have an important connection, for the Court to accept

the assurance of counsel that it will be so followed up, and permit it to go to the jury; and if the assurance is not fulfilled, then, on application of the opposing counsel, to direct the jury not to regard it. But this is a rule which, from its liability to abuse, ought not to be enlarged. Experience has convinced us that verdicts are not unfrequently rendered under the influence of irrelevant testimony, admitted upon the unfulfilled assurances of counsel, honestly acting upon information or instructions of their clients that it will be made relevant and material by other testimony to be subsequently produced, notwithstanding the positive instructions of the Court, afterwards given, that it must not be regarded. Juries are not always composed of men who either can or will divert their thoughts from such proof, and prevent it from having any influence upon their minds. It would, in our judgment, have been a better and safer practice if the Courts had, in all cases, required proof of this character to be preceded by that in connection with which it would become important and material, and we are not disposed to extend the rule beyond what is demanded by express adjudications. We are not aware of any decision that has applied the rule to a case where declarations or acts of agents are offered for the purpose of binding their principals. On the contrary, it is plainly said, in *Marshall vs. Haney*, 4 *Md.*, 511, that the declarations of an agent are not admissible to bind his principal under any circumstances until the agency *is first* clearly established, and the language of the Court, in *Atwell vs. Miller*, 11 *Md.*, 359, is to the same effect. It is conceded, of course, that, to entitle the plaintiff to recover in this action, there must be proof that Hoflin was duly authorized to give the order and direct the purchase on the joint account of the defendants. This authority or agency need not be proved by writing; it may be inferred from facts and circumstances, from the permission and acceptance of his services, and subsequent adoption and ratification of his acts, will suffice. But, before his admissions, declarations or acts were admitted to

bind the defendants, we think the Court should have required the production of some proof tending to show the existence of such agency or authority. The failure, however, to do so, is not, in this instance, an error requiring a reversal of the judgment, because we are of opinion there was some evidence adduced tending to show the agency, and fully sustaining the refusal of the Court—which is the subject of the fourth exception—to exclude Hoflin's statement, on the ground that no such proof had been given, and the defendants were not, therefore, in fact, prejudiced by the ruling in the second exception.

3d. The third exception was taken, as we understand it, exclusively to the admission of the letters of Dibble & Cambloss, the New York brokers and agents of the plaintiff, to prove the purchase and subsequent sale of the stock. In admitting these as evidence for that purpose, an error, material and fatal to the judgment, was committed. We have already said that, whilst it was competent for the plaintiff to execute the order and enforce his rights by a purchase and sale of the stock in New York, yet he must establish these facts by legal and competent proof. Without an express agreement to that effect, no usage or custom of trade can be allowed to override the plain rules of evidence, and give to the mere letters of a broker, stating his accounts of purchases and sales, the force and effect of records or judgments importing absolute verity, or impart to the unsworn statements they contain the same efficacy as if made under the sanction of the oaths of the writers, with opportunity of testing their truth and accuracy by a cross-examination. The plaintiff's own letter, written immediately upon receiving the order directing the New York brokers to buy, was admissible to prove that he was prompt to take the necessary steps to execute the order, and gave proper directions to that end; but it would violate cardinal rules and principles of evidence to receive their letters to him to prove, as against the defendants, that the stock was actually purchased and sold in New York.

These brokers should have been brought to the stand as wit-
nesses, or their testimony taken under a commission. These
letters ought, therefore, to have been excluded, and being
excluded, the defendants' fifth prayer would have been cor-
rect, inasmuch as the plaintiff himself testified he had no
knowledge of the purchase or sale of the stock, apart from
these letters.

.4th. If the purchase in the mode we have pointed out had
been established by competent proof, the plaintiff was not
bound to make an actual tender of the stock to the defend-
ants. We have said it was sufficient.if he notified them of
the fact of the purchase, and had certificates of the stock, or
other usual evidences of title thereto, in his own hands, or in
those of his New York agents, ready to be delivered or trans-
ferred to the defendants upon their tender of payment there-
for. Nor was it necessary that the subsequent sale upon
default should have been made at a public sale or at a public
stock board, and at no other place., A sale, publicly and
fairly made, at the stock exchange or a stock board or at a
brokers' board, where such stocks are usually sold, would
have been good. In *Dalrymple's Case*, 25 *Md.*, 242, it was
held that a sale at the brokers' board, publicly and fairly
made by the pledgee of stock, under authority from the
pledgor to sell upon default, without further notice, was
legal and valid. There was, therefore, no error in the re-
jection of the defendants' third prayer.· Their sixth prayer
was also properly rejected, because there was in evidence to
the jury the positive testimony of the plaintiff, that he had
actually paid to his New York agents the $12,825 for the
stock, which he had directed to be purchased under the defen-
dants' order.  ·

5th. It is not necessary to decide whether upon the evi-
dence which the Court admitted, the instruction granted at
the instance of the plaintiff was correct, because, as we have
shown, there was a fatal error in admitting in evidence the
letters objected to, which constituted the only proof of any.

purchase or sale of the stock. It is apparent this instruction must fall with the rejection of these letters. If, upon another trial which will be awarded, the plaintiff can establish by legal proof this purchase and sale in the mode before stated, in addition to the testimony now decided to have been legitimately admitted, there will be no difficulty in framing an instruction, which will properly present the law of his case, in accordance with the views expressed in this opinion.

> *Judgment reversed and*
> *new trial awarded.*

(Decided 25th February, 1870.)