# SWINDELL BROS. *vs.* JAMES L. GILBERT et al.

*Proof of Agency—Admissibility of Evidence.*

Defendant made a formal contract with a builder for the erection of a warehouse under the supervision of an architect. Plaintiffs, lumber dealers, told the architect that they would not sell to the contractor, who was not financially responsible, when the architect said that the defendant would pay the bills, but the lumber should be charged to the contractor. Orders for lumber were given by the architect, checks in part payment were drawn by the defendant to the order of the contractor but he was required immediately to endorse them to the plaintiffs and they did not remain in his possession, and in other respects the contractor was ignored in the transactions between the plaintiffs and the architect. There was other evidence to show that the apparent relation of architect, contractor and owner created by the formal contract was a sham. In an action to recover for the balance of the lumber so furnished and used in the construction of defendant's warehouse, *held*, that the evidence was legally sufficient to show that the architect was the authorized agent of the defendant in purchasing lumber from the plaintiffs, and therefore that question was properly submitted to the finding of the jury.

When the question was whether the defendant had authorized an agent to buy from the plaintiff, a letter from the defendant to the plaintiff was offered in evidence, in which the writer said: "We have favored you with our patronage during the past year and I ask you to reciprocate by giving me an advertisement." *Held*, that the letter was admissible, and it was for the jury to decide whether the patronage referred to was the purchase by the alleged agent or a different transaction.

When the answer to a question which is not competent evidence was not adverse to the appellant, the allowance of such question is not reversible error.

Appeal from the Superior Court of Baltimore City (WICKES, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*William S. Bryan, Jr.*, and *Robert F. Stanton* (with whom was *William Penrose* on the brief), for the appellants.

*Joseph C. France* (with whom was *George R. Willis* on the brief), for the appellees.

PAGE, J., delivered the opinion of the Court.

This is an action of *assumpsit*, brought by the appellees to recover for certain lumber alleged to have been sold to the appellants.    In the original writ, the firm of Davis and Brother were joined as defendants, but before the case went to the jury they were dismissed on motion of the appellees.    The judgment being against the appellants they have appealed.

There were five exceptions; four to the admission of evidence, and one from the refusal of the Court to grant the first, second, fifth and seventh prayers asked for by the appellants.

The main question in the case was whether any evidence had gone to the jury sufficient to show there was a sale and delivery of the lumber set out in the declaration; and the Court was asked to instruct that there was no such evidence, and that therefore the verdict must be for the appellants, and incidental to that it was also contended by the appellants, and the contention is embodied in their seventh prayer, and in their first, second and third exceptions, that certain conversation between Frank R. Davis and the Gilberts, should not be received because there was no evidence of the agency or authority of Davis to speak or act for the appellants.    These will be considered in their order.

The proof shows that the appellants, being about to construct additional stories on their warehouse, on plans prepared by Davis & Bro. their architects, entered into a contract with one Flaggs a builder to erect the same.    A copy of the contract is in the record, and it is in form and substance the usual one between builders or contractors and owner.    It seems to be clear that the appellees furnished the lumber, and that all so furnished was used by the appellants and went into their building.    The contract for furnishing the lumber was made in the name of Flaggs, but the contention of the appellees was that it was in fact sold directly to the appellants, through the agency of the Davises, and that Flaggs was not in fact the real

contractor but a mere sham.   To maintain this, they offered evi-
dence tending to show that Flaggs was without means, and
therefore not in a position to claim or expect an extensive
credit from anyone.    There was also evidence tending to show
that Gilbert Bros. made a bid to Flaggs for the lumber, but
this bid was not accepted; later on however, according to the
evidence of Gilbert, Henry R. Davis asked Gilbert, "Why
don't you figure on the job."    Witness said, "we can't sell
Flaggs that quantity of lumber;"   Davis then said, "take
Flaggs out and you figure for Swindell to pay the bill;" and
witness said, "he would;" "now this is to be charged to Swin-
dell Bros.;" "No," Davis replied, "you charge it to Flaggs and
get your orders and *we* will pay the bill."    "And on those
conditions only," proceeded the witness, "did we furnish the
lumber, that Swindell Bros. were to pay the bill."    There was
also evidence that this bill was added to on the order of Davis
on the 14th of April, 1902, without the knowledge and con-
sent of Flaggs.    Flaggs also testified that he first gave the
job for the lumber to Thomas Matthews, but afterwards turned
him down and gave it to the Gilberts.    That he had met Gil-
bert in Davis' office, and at that time "Gilbert cut his original
bid," but he Flaggs, "can't tell how Gilbert got there, but
however I got the lumber from Gilbert to build the building
with, after he had shaded his price in some way or other."
There was also evidence tending to show that Swindell Bros.
carried out the arrangements made with Davis as to payments.
The checks were made out to Flaggs, but he was required to
endorse them before they passed from the hands of the Swin-
dells,who then delivered them to the Gilberts, without their ever
having been in the possession of Flaggs, who would have been
entitled to them according to his contract with the Swindells,
unless the latter had ignored him.    In addition to this, it was
contended that the Swindells had recognized their liability to
the Gilberts, when on demand for the payment of the $5,000
note to Flaggs, they paid $2,500 to them, without consulta-
tion with, or the knowledge of, Flaggs.    Moreover one of the
Swindells testifies, that "he had to have Flaggs' consent, but

if Davis had told him to draw a check that would insure Gilbert getting the money and Flaggs not getting it the chances are he would." "We left the matter of ordering material or work in the hands of the architect," but, "he didn't think the architects had any authority to order any material or work not included in Flaggs' contract."

It does not appear to be necessary to devote further time to this branch of the case. There is much evidence in the case which tended to deny or explain the evidence we have referred to, but it is not within our duty now to express any opinion as to whether such effort ought to have been successful. The only question before us now is, was there any evidence from which if true the jury could have found as they did. The prayer of the appellant conceded the truth of the evidence, but denies the right of the plaintiff to recover upon that hypothesis of fact. *County Commrs.* v. *Wise,* 75 Md. 43.

Here was evidence tending to show that Flaggs was a non-entity in the business, was ignored in the purchasing of the material and in the payments made therefor; and also in the changes of the amount of material, and the whole matter apparently left in charge of the appellants or their agent. And if the jury believed this, they might have found that Flaggs was in fact only a figure head. But it was contended at the trial and at the argument there was no evidence from which the jury could find the authority or agency of Davis, to bind the appellants. This was a matter for the jury to find. In addition to what has already been said that is applicable to this particular inquiry it may also be added that if the jury found that Flaggs was only a sham, and that not he, but Davis in fact, made the contract and conducted all the dealings with the Gilberts, and that the Swindells accepted the full benefit of Davis' acts in and about the matter in receiving the material and disposing of it to their own use and in making the payments according to the arrangements made by Davis, with knowledge thereof, then from these facts alone, if not explained away or contradicted, the jury might have found the agency. 'The authority of an agent need not be proved by writing; it

may be inferred from facts and circumstances and from the permission and acceptance of his services and subsequent adoption and ratification of his acts will suffice." "When evidence of facts *in pais* tending to show the relation of principal and agent exists, has been offered directly or circumstantially, it is then the province of the jury to determine whether there is or not such proof of agency, as to make declarations of the supposed agent binding on the principal." *Rosenstock* v. *Tormcy*, 32 Md. 182; *National Mechanics Bank of Baltimore* v. *National Bank of Baltimore*, 36 Md. 21.

It follows from what has been said we find no error in the ruling on the prayers, or in the second exception.

The first exception was to the admission of a letter to the Gilberts from one of the Swindell brothers in which the following passage occurs, viz.: "We have favored you with our patronage during the past year and I ask you to reciprocate by giving me an advertisement in the paper." It was for the jury to find what was referred to by the words "our patronage." It was shown that in 1902 the Swindells had purchased a small bill of the Gilberts and if it referred to that bill there would be no pertinency to the case, but whether it did have such reference or to the lumber, was a matter for the decision of the jury.

With reference to the third and fourth exceptions, all that is necessary to be said is that whether the rulings were correct or not the appellants were not injured thereby. One of the Davises was asked, if he did not tell the Baltimore Brick Company that Swindell would pay the bill, and the reply was in the negative; in the fourth exception the witness was asked if the Brick Company or Mr. Griffiths did not say to him that he had bought their brick for Swindell and the witness in his answer denied that either "made such a speech." So that even if it was error to allow such questions to be asked (which we do not decide) there would be no reversible error, because the answer was not and could not be injurious to the appellants.

Finding no error in the rulings of the Court the judgment must be affirmed.    *Judgment affirmed, the appellants to pay the costs.*

(Decided January 19th, 1905.)