(Decided 20th June, 1872.)

GEORGE BAKER *vs.* JOHN E. WAINWRIGHT, RICH'D S. WAINWRIGHT, and others, trading as WAINWRIGHT BROTHERS.

*Contract not within the* IV *Section of the Statue of Frauds—Contract of Agency.*

The defendants, desiring to purchase a parcel of land about to be sold at sheriff's sale, and for the purpose of securing a debt due them by the owners, and not wishing to be known as the purchasers, requested the plaintiff to attend the sale and purchase the land for them. He, in company with the defendants and their attorneys, attended the sale and purchased the land in his own name, and paid the sheriff, as part of the purchase money, $200, for which the defendants immediately gave him their check. The plaintiff and the sheriff, in the presence of the defendants and their attorneys, signed an instrument of writing in

which the terms of sale were stated: Two hundred dollars of the purchase money was to be paid in cash, the balance on a day specified; and in case it should not be so paid, the land was to be re-sold at the purchaser's risk, he to derive no benefit from the re-sale, but to pay the deficiency between his bid and the price subsequently obtained, with all interest, costs and expenses. Upon complying with the conditions of sale, the purchaser was to have a deed. The plaintiff, over his own name, with his seal affixed, acknowledged himself indebted to the sheriff, and bound himself to pay the purchase money according to the conditions of sale. The defendants thanked the plaintiff for what he had done, and promised to pay the balance of the purchase money agreeably to the terms of sale, and that the plaintiff should have no further trouble in the matter. The plaintiff directed the sheriff's deed for the land to be made to the defendants. The defendants failed to pay the balance of the purchase money at the time designated, and requested and obtained from the sheriff an extension of time for about six weeks, at which time they likewise failed to pay. The land was afterwards re-sold by the sheriff at a less price, and he thereupon sued the plaintiff for the balance on the first sale, and obtained a judgment against him, which he was compelled to pay under execution. The defendants assigned to the plaintiff a claim, out of which he realised the greater part of the sum paid by him. On a suit brought by the plaintiff to recover from the defendants so much of the money thus paid by him, as remained unpaid by them, together with interest, costs and expenses, it was HELD:

That the contract between the plaintiff and the defendants did not come within either the letter or the spirit of the 4th section of the Statute of Frauds. It was simply a contract of agency, and parol testimony was admissible to prove it.

APPEAL from the Circuit Court for Cecil County.

The facts of the case are sufficiently stated in the opinion of the Court. Three exceptions were taken by the plaintiff; the first and second are omitted, as upon the questions thereby raised, no opinion was expressed by the Court.

*Third Exception:* The plaintiff prayed the Court to instruct the jury as follows:

1. That if the jury find from the evidence that the defendants employed the plaintiff to transact certain business for them, and that he did transact said business in their presence and under their direction, and in a manner approved by

them, and that in the transaction of said business, and for liabilities thereby incurred, he paid money which they promised to repay, that then he is entitled to recover for all money so paid, with legal interest thereon.

2. That if the jury find from the evidence that the plaintiff was employed by the defendants to purchase a certain parcel of land, and that he did purchase it according to their directions, in his own name and for their benefit, he is entitled to recover for his expenses in the transaction of the business.

3. That if the jury find from the evidence that the defendants had an interest in the sale of certain land then about to be sold by the sheriff, and for the purpose of saving a debt due to them by the owner thereof, or in expectation of deriving some benefit to themselves thereby, they requested the plaintiff to purchase said land in his own name, and in consideration thereof promised, if he would do so, that they would indemnify him against any loss which he might thereby incur; and further find, that the plaintiff did purchase said land as requested, and did sustain loss and damage in consequence thereof, that then he is entitled to recover for the loss and damage actually sustained by him in the transaction of the business.

4. That if the jury find from the evidence that the defendants had an interest in the sale of certain land, and for the purpose of securing a debt due to them by the owner thereof, or in expectation of deriving some benefit to themselves thereby, requested the plaintiff to purchase said land in his own name, and in consideration thereof promised that, if he would do so, they would furnish him the money necessary to make the purchase; and further find, that the plaintiff did purchase said land as requested by the defendants, and that they refused afterwards to comply with their said agreement, that then the plaintiff is entitled to recover for the loss and damage actually sustained by him in consequence thereof.

5. That if the jury find from the evidence that the plaintiff, at the instance and request of the defendants, agreed to

purchase for them in his own name a parcel of land, and that they, on their part, agreed to furnish him with the money to pay for the same; and further find, that he performed his part of said agreement, but that they refused to comply with the agreement on their part, and that the acts of part performance on the part of the plaintiff were such, that the refusal of the defendants to comply with their part of the agreement was a fraud on the plaintiff, that then he is entitled to recover the money paid by him in execution of said agreement, and upon the faith of it, with legal interest.

6. That if the jury find the facts stated in the last prayer, then the plaintiff is entitled to recover for his expenses incurred in such part performance.

And the defendants offered the following prayer:

That the evidence in this cause is not legally sufficient to entitle the plaintiff to recover.

The Court (WICKES and STUMP, J.) rejected the prayers offered by the plaintiff, and granted the prayer offered by the defendants; whereupon the plaintiff excepted, and the verdict and judgment being for the defendants, he appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ROBINSON, J.

*Henry W. Archer*, for the appellant.

The contract sued on being a Pennsylvania contract, the laws of that State must govern it, and such a parol contract being valid there, is also binding in this State. It was contended at the trial below, that the 4th section of the Statute of Frauds applied only to the remedy upon the contract; but the distinction is plain and very broad between a law which modifies, and one which denies all remedy upon a contract. The latter impairs its obligation, and when applied to a contract which was valid when and where it was entered into, is unconstitutional, and the *lex loci contractus* must prevail. *Story's Conflict of Laws*, sec. 262; *Bronson vs. Kinzie*, 1

*Howard,* 316; *American Law Register, March,* 1871, *pp.* 140, 141.

The case is not within the Statute of Frauds, even if it were a Maryland contract, to be decided according to Maryland law. The suit is not upon a contract for the sale of land, but upon an independent collateral contract, whereby the defendants employed the plaintiff to act for them as their agent; and it has been repeatedly held, that such employment may be proved by parol, and if the employment may be by parol, the liability of the principal to his agent is complete. *Story on Contracts,* secs. 128, 137, 176; *Coles vs. Trecothick,* 9 *Vesey,* 250; *McWhorter vs. McMahan,* 10 *Paige,* 386, 394; · *Lawrence vs. Taylor,* 5 *Hill,* 107; *Rosenstock vs. Tormey,* 32 *Md.,* 181.

But even if the agreement between the plaintiff and the defendants were within the Statute of Frauds, there has been such part performance by the plaintiff that the defendants' refusal to comply is a gross fraud upon him, and even a Court of Law will grant relief, at least to the extent of his outlays and expenses. The agreement in this case has in fact been fully executed on the part of the plaintiff. *Bowie's Ex'r vs. Bowie,* 1 *Md.,* 94; *Kidder vs. Hunt,* 1 *Pick.,* 328.

*Albert Constable* and *Reuben Haines,* for the appellees.

Taking the contract as alleged by Baker in his *narr.,* it is clearly within the Statute of Frauds. As there stated, it is simply this: Baker was to purchase the real estate in his own name, and afterwards to re-sell to the Wainwrights. Baker became the purchaser in his own name, and at his own bid. As such it was struck off to him, and as such he signed and sealed the contract with the sheriff. Subject to the conditions of sale, he was the owner, legal and equitable, of the property. He alleges that the Wainwrights agreed to furnish the money, and because they have not done so, he brings this suit. But were the Wainwrights to furnish the money to enable him to pay for *his* land? "No," says Baker,

"they were to have the land." How? He was the owner—called by whatever name. The transaction which was to divest the title out of Baker and put it in the Wainwrights, was, in the eye of common sense and common law, a re-sale. It was such in design and in effect. The appellant says all this was an ordinary case of an agency within the 4th section of the Statute—an agency to sign a note or memorandum for a principal. Such is not the language of the books. *Lamborn vs. Watson,* 6 *H. & J.,* 252; *Lamborn vs. Moore,* 6 *H. & J.,* 422; *Dorsey vs. Clarke,* 4 *H. & J.,* 551; *Rowland vs. Crawford,* 7 *H. & J.,* 52; *Hollida vs. Shoop,* 4 *Md.,* 465; *White vs. Coombs,* 27 *Md.,* 489; *Green vs. Drummond,* 31 *Md.,* 71; *Hall vs. Shultz,* 4 *Johnson,* 240; *Sherrill vs. Crosby,* 14 *Johnson,* 361; *Van Alstine vs. Wimple,* 5 *Cowen,* 162; *Bartlett vs. Pickersgill,* 4 *East,* 577, *note (b.)*

It is not denied that an agent may be employed by parol, but the contract he makes is his principal's. Though authorized by parol, the contract he makes must be in writing, and signed in such manner as to bind his principal. In such cases the execution of the agency is his discharge. He can suffer no damage. It is to make a contract for another, and that accomplished he is free, and his principal bound. This is the extent of that authority to the agent, spoken of in the 4th section of the Statute of Frauds, and such authority may be by parol.

Can it be contended, seriously, that a contract to purchase land for a principal in an agent's own name, with the further stipulation that the principal is to be the owner, and at some future time to furnish the money to enable the agent to meet his engagements, is not a contract or sale of lands, or any interest in or concerning them. Yet such is the position assumed in this case by the appellant.

What is the consideration of Wainwright's promise? That Baker would purchase the land and let the Wainwrights have it afterwards. The contract is an entirety, and it has been decided that when any part of the consideration is within the

Statute, the contract cannot be enforced. *Head vs. Baldrey,*
6 *Adol. & Ell.,* 459; *Mechelen vs. Wallace,* 7 *Adol. & Ell.,* 49;
*Van Alstine vs. Wimple,* 5 *Cowen,* 162.

The proof was that Baker made the purchase in his own
name. Now in what position were the Wainwrights? Baker
had the legal title, and would they have been heard to say
the purchase was for their benefit? Or, according to what
seems to be Baker's idea, could they have sued Baker at law
for damages in not performing his contract. If Baker in this
case can sue his principals, the Wainwrights in that could sue
their agent. Here is an easy solution to that class of cases in
equity, in regard to resulting trusts. They will be turned
into actions at law against agents. The measure of damage
will be the value of the land. *Hollida vs. Shoop,* 4 *Md.,* 465;
*Green vs. Drummond,* 31 *Md.,* 71.

Who was the owner of the land? Baker. He bought it
at sheriff's sale, and the legal title was in him. It was a
judicial sale, and no deed was necessary. Then certainly, as
between the sheriff and Baker, it was a sale of land. How
were the Wainwrights to get it? By another sale in which
Baker was to be vendor. Yet Baker argues that their agree-
ment was not a contract or sale of land, or any interest in or
concerning it.

Baker is in this dilemma: either it was as stated in his
*narr.,* and then it is within the Statute; or it was as stated
in the evidence—an agreement to make the contract of pur-
chase for the Wainwrights; and if so, he has not performed
it. In neither event can he recover. Instead of making a
contract for the Wainwrights—as he says he was asked to do,
and which would have been valid and binding according to
the Statute—he made a contract for himself. The Wain-
wrights are not bound by him at all; and if there was an
agreement by which he thought to secure himself, it was
different from the simple authority to an agent to sign a
note or memorandum contemplated by the 4th section of the
Statute. He had full authority, according to his statement,

to made a contract between the Wainwrights on the one side and the sheriff on the other, but he has not chosen to do so.

BARTOL, C. J., delivered the opinion of the Court.

This action was instituted by the appellant, to recover compensation and indemnity for liability and expenses incurred by him, in the service and employment of the appellees as their agent.

To support the plaintiff's case, parol evidence was offered (subject to exception as to its admissibility) as follows:

"That on the first day of March, 1867, the defendants desiring to purchase a parcel of land situated in Delaware county, in the State of Pennsylvania, which was then about to be sold at public auction by the sheriff of that county, and for the purpose of securing a debt due to them by the owner thereof, and wishing not to be known as the purchasers thereof, requested the plaintiff to attend the sale, and bid for, and purchase the land for them at a price not exceeding $8,000. That plaintiff, in company with the defendants and their attorneys, attended the sale, and plaintiff bid for the land to the amount of $7,025, at which price it was knocked down to him by the sheriff, as the purchaser; $200, a part of the purchase money, was paid by him in cash to the sheriff, and the defendants immediately after, then and there, gave him their check for the same."

It was further proved (also subject to exception) that at the time and place of sale, in the presence of the defendants and their attorneys, the following instruments of writing were signed, viz:

"The conditions of sale of all the right, title and interest of John A. Morris, Thomas H. Wilson and John H. Musser, trading as Morris, Wilson & Co., of in and to the real estate described in the above annexed advertisement of sale are as follows:"

"*First.* The highest and best bidder by fair and open bids, shall be the purchaser."

" *Second.* $200 of the price, or sum at which the above described premises may be struck off, must be paid at the time and place of sale, * * * and the residue of the purchase money must be paid to the sheriff at his office in the borough of Media, on or before the fourth Monday of March, 1867."

" *Third.* If the person or persons to whom said real estate may be struck off, shall neglect to take the same at his or their bid, and fail to comply with the conditions of the sale thereof, the same will be exposed to sale again by reason of such default, at the sole risk of the purchaser or purchasers thereof, who shall derive no benefit from such second sale, but he or they shall pay any and all deficiency between his or their bid, and the price the same shall bring at such subsequent sale, with all interest, costs and expenses consequent thereon."

"*Fourth.* The purchaser complying with the conditions, shall have a deed made in due form of law, on paying the customary fees.      Signed,

CALEB HOOPES, *Sheriff.*"

" I do hereby acknowledge that the real estate described in the advertisement of sale, was fairly struck off to me at my bid, at and for the price or sum of $7,025, which sum I do hereby acknowledge myself indebted to Caleb Hoopes, sheriff, and bind myself for the payment of the same, agreeably to the conditions of sale."

" In testimony whereof, we have hereunto set our hand and seal, this first day of March, A. D. 1867.

Signed,      GEO. BAKER. [*Seal.*]

Witness present at signing,
    B. F. BAKER."

"Received two hundred dollars, part of the purchase money for the real estate described in the advertisement of sale.

Signed,      CALEB HOOPES, *Sheriff.*"

"And further proved that the defendants then and there, thanked plaintiff for what he had done in the premises, and promised to comply with the conditions, and pay the residue of the purchase money for the land, when payable, according to the terms of sale, and that plaintiff should have no further trouble in the matter, and that plaintiff directed that the sheriff's deed for the land should be made to the defendants, and the time and place were appointed for the payment of the money, and the delivery of the deed as aforesaid, and the defendants assented and expressed themselves as fully satisfied with the arrangement. That the parties met accordingly at the time and place appointed, when defendants said that they were unable to procure the balance of the purchase money, and requested and obtained an extension of time from the sheriff, for about six weeks, at which time they promised to pay the same, but that they failed to do so, and the property was afterwards re-sold by the sheriff at a less price, and purchased by a brother of the defendants."

" That plaintiff was thereupon sued by the sheriff for the balance of the purchase money on the first sale mentioned, and judgment was obtained against him thereon on the 27th day of February, 1868, for the sum of $3,749.87, with interest and costs, which plaintiff was compelled to pay under execution, as shown by the record of the judgment offered in evidence by the plaintiff. That plaintiff frequently called upon defendants to furnish the money for payment of the balance of purchase money, and they frequently promised to do so, and to pay plaintiff for all his payments, trouble and expense in the premises, and for that purpose assigned him a claim, on which he realized about $3,000."

" It was further proved that when the suit of the sheriff against the plaintff came on for trial in the Court of Common Pleas in Delaware county, Pennsylvania, the defendants attended for the avowed purpose of defending the suit, and the attorneys who appeared on the record as the attorneys of Baker, had been consulted by the Wainwrights in reference

to the suit. That there was a consultation between the said attorneys, the defendants and Baker (the plaintiff in this cause,) in reference to the case, and the proper course to be pursued, and it was agreed that judgment should be entered for the aforesaid sum of $3,749.87, on condition that a stay of execution thereon should be given for three months, at which time the defendants promised to pay the said amount, and at their request the judgment was entered accordingly."

The object of this suit is to recover the balance of the money thus paid by the plaintiff, which remains unpaid to him by the defendants, with interest thereon, being the loss, cost and expenses incurred by the plaintiff in the service of the defendants as their agent.

The only question material for us to decide on this appeal, arises upon the third bill of exceptions. Upon the state of facts disclosed by the testimony, which we have set out at length, six prayers were offered by the plaintiff, all of which were refused, and the Circuit Court, at the instance of the defendants, instructed the jury *" that the evidence in the cause was not legally sufficient to entitle the plaintiff to recover."*

The ground on which the appellees support this instruction, and that upon which the whole defence rests, is that the contract between the appellant and appellees, as shown by the proof, comes within the *fourth section* of the Statute of Frauds, which declares that *" no action shall be brought upon any contract, or sale of lands, tenements* or hereditaments, or any interest in or concerning them, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, signed by the party to be charged, or some other person thereunto by him lawfully authorized."

Unquestionably the claim of the plaintiff in this case is a most just and meritorious one, and if this defence is to prevail, there would seem to be a failure and denial of justice.

It was remarked by Chief Justice BUCHANAN, in delivering the opinion in *Lamborn vs. Watson,* 6 *H. & J.,* 255, where

the defence under the Statute was successfully relied on for the protection of a dishonest defendant, "*that the Statute probably generates* as many frauds as it prevents." Still the Statute is binding upon us and must be obeyed and enforced whenever a case falls within its provisions. The experience of nearly two hundred years has proved its wisdom, and whatever opinions may have been expressed with regard to the apparent hardship, sometimes caused by enforcing its requirements of written testimony in certain cases, it has no doubt, in the main, served the purpose of its enactment, in the prevention of frauds and perjuries, and proved a great safe-guard and protection against illegal and groundless claims. No where have its provisions been more strictly and constantly enforced than in this State. We are not in favor of impairing or restricting its operation. But in the opinion of a majority of this Court, the present case does not fall within either the letter or the spirit of the *fourth section.*

The contract upon which the liability of the defendants arises, is not one involving a title to land. It is simply a contract of agency, under which the plaintiff as agent, has incurred loss and expense, for which he seeks compensation. Judge STORY, in his work on *Agency, sec.* 339, says : " If an agent has, without his own fault, incurred losses or damages in the course of transacting the business of his principal, he will be entitled to full compensation therefor."

In this case, the business and employment of the agent, it is true, was to purchase land ; but this does not bring the case within the fourth section of the Statute. The purchase of land was a matter collateral to the contract, which constituted the relation of principal and agent between the parties, and on which the liability arises. To prove this contract, written proof is not necessary. It has long been settled that the employment of an agent under the 4th section of the Statute need not be by writing, the authority of the agent may be shown by parol. *Coles vs. Trecothick,* 9 *Ves.* 250. We refer

also to *Browne on Statute of Frauds, sec.* 370, and 2 *Kent's Com.* 614, and the *cases there cited.*

In *Sugden, on Vendors and Purchasers, ch.* 4, *sec.* 5, (*last London Ed.* 145) the learned author says: "In the 1st and 3d sections of the Statute of Frauds, which relate to leases, &c., the writing is required to be signed by the parties making it, or *their agent authorized by writing.* This latter requisite is omitted in the 4th and 17th sections of the Statute. The Legislature seems to have taken this distinction, that where an interest is intended to be actually passed, the agent must be authorized in writing; but that where a mere agreement is entered into, the agent need not be constituted by writing, and therefore an agent may be authorized by parol to treat for, or buy, or sell an estate, although the contract itself must be in writing." For this, many cases are cited in "*note a.*"

If an agent for this purpose, can be legally constituted by parol, it would seem to follow, logically, that when so appointed, he would be entitled to recover compensation and indemnity for his services rendered, and for his costs and expenses incurred in attending to the business of his principal, and that the principal cannot escape his liability upon the ground that the contract which the agent has been authorized to make, is within the Statute of Frauds, and must be evidenced by writing.

If the agreement for the purchase of the land in this case had been signed by the plaintiff in the name of his principals, the defendants, for whom the purchase was made, or had been signed by him as agent, there would be no doubt of the right of the plaintiff to maintain this suit. This has virtually been conceded in the argument, but having signed the contract in his own name as purchaser, it is argued that parol evidence is inadmissible to show that the real purchasers were the defendants, and that he signed it as their agent. The argument is that such evidence is inadmissible to bind the defendants, because, it is said, that if the plaintiff had chosen to claim the

benefit of the purchase for himself, and had gone on to complete the contract, had paid the purchase money and obtained a deed, the defendants would have been without remedy, that they could not have claimed the benefit of the contract or been allowed to give parol evidence to prove that the land was purchased for them, according to the decision in *Lamborn vs. Watson*, 6 *H. & J.*, 252; *Dorsey vs. Clarke*, 4 *H. & J.*, 551, *and Bartlett vs. Pickersgill*, 4 *East.* 576, *note a.*

If this be conceded, the fact that the plaintiff had it in his power to abuse the confidence reposed in him, and to commit a fraud, is no answer to his demand in the present suit, where the evidence shows that he faithfully performed the service in which he was employed; nor does it in our opinion afford any reason why his appointment as agent may not be shown by parol.

The purchase was made by him in his own name, at the instance and request of the defendants, who were present, assented and approved of what he had done, paid a part of the purchase money, were well known to the vendor as the real purchasers, and had the opportunity of obtaining the benefit of the purchase, by paying the balance of the price, which they promised to do, and receiving the deed, which the sheriff was directed to make to them. Having failed to perform their contract, and the plaintiff, who had rendered himself responsible by the form in which he had entered into the contract, having been compelled to pay the money, ought to be entitled to recover the same, as money paid for the defendants at their instance and request.

If the agent makes the contract in his own name, it is well settled that he is personally bound and may be held liable; but his principle will also be bound, although not named in the contract, if it be shown that the agent was authorized so to contract for him, and in fact entered into the contract as agent for his benefit and in pursuance of his authority; and there is no good reason why parol evidence may not be received to prove this fact.

Many cases have arisen under the 17th section of the Statute of Frauds, relating to the sale of goods, wares and merchandize, in which it has been held that where the written contract is made in the name of the agent, parol evidence is admissible to prove that the party signing was agent merely, and some other person was principal.

In *Wilson vs. Hart,* 7 *Taunt.,* 295, PARK, J., said : " It is the constant course to shew by parol evidence whether a contracting party is agent or principal." .

The same doctrine was held in *Higgins, et al. vs. Senior,* 8 *Mee. & W.,* 834; *Dykers vs. Townsend,* 24 *N. Y.,* 60, 61 ; *Hubbert vs. Borden,* 6 *Wharton,* 79 ; *Ford vs. Williams,* 21 *Howard,* 287 ; and by this Court in *Oelricks & Lurman vs. Ford,* 21 *Md.,* 489. It is argued that this doctrine applies only to commercial contracts, under the 17th section, and is inapplicable to contracts relating to land falling under the 4th section. It will be observed that the terms of the two sections are substantially the same, so far as they relate to the signing by the party to be bound, or by his agent, thereunto lawfully authorized.

But there are well adjudged cases in which such evidence has been held admissible, where contracts for the purchase of lands have been made by agents. In *Sugden on Vendors and Purchasers, chap.* 1, *sec.* 3, *p.* 47, *plac.* 9, it is said : "Where the principal denies the authority, and the agent is compelled to perform the agreement himself, because he cannot prove the commission, he may afterwards file a bill against his principal; and if the principal deny the authority, an issue will be directed to try the fact; and if the authority be proved, the principal will be compelled to take the estate at the sum which he authorized the agent to bid." In support of this, the author refers to *Wyatt vs. Allan, M. S.,* decided in 1777, which is found in the same volume, Appendix No. 7. That case, if it be considered as good authority, settles the question here involved.

The same author, on page 145, speaking of the purchase of estates by an agent, says : " But of course, although he pur-

chased in his own name, yet the fact of the agency, so as to charge the principal, may be made out by parol evidence." And cites *Wilson vs. Hart,* 1 *Moore,* 45; *Marston vs. Roe,* 8 *Ad. & El.,* 14.

The case of *Wilson vs. Hart,* here cited, we have not found; but have examined *Marston vs. Roe,* and find that it fully supports the proposition in the text. There, real estate was purchased by *Joseph Fox,* and the written agreement, evidencing the purchase, was signed by him in his own name, (p. 20.) At the trial of the cause, the plaintiff, for the purpose of showing that it was *John Fox* who entered into the contract for the purchase of the land, and that *Joseph* was his agent in that behalf, and had signed the contract as such agent, offered to give parol evidence that *Joseph* was appointed by *John* his agent, for the purpose of making the agreement, and that in consequence of such appointment, *Joseph* did, in his own name, but as agent as aforesaid, and on behalf of *John,* sign the agreement. The evidence being objected to, was rejected by the Court below, ALDERSON, B., sitting.

At the trial of the case on appeal in the Exchequer, CAMPBELL, the Attorney General, arguing the case for the defendant, (p. 30,) contended that the parol evidence was properly rejected, because "its object was to prove a trust of lands created by parol, contrary to the Statute of Frauds. He said, if Joseph had the legal estate in him, it could not be proved by parol that he held as trustee, and if his interest was only equitable, the same objection applies, it being an interest in land. Nor can it make any difference whether the party is called a trustee or an agent. There is not indeed any proof that he did sign as agent. The contract is simply executed by Joseph Fox, in his own name; and the attempt is, in effect, to show by parol that he made the agreement as trustee."

[Lord ABINGER, C. B.: "Agency would not make him a trustee in the sense in which you state it." PARKE, B.: "May not a man be authorized by parol to make an executory agreement for another?" TINDALL, C. J.: "As an auctioneer is

made by parol the authorized agent of the parties to the sale."]

The case was decided in favor of the plaintiff upon other grounds, which rendered it immaterial to pass upon the bill of exceptions, involving the admissibility of the parol testimony. But TINDALL, C. J., in delivering the opinion, said: "We have no hesitation in declaring that the learned Judge was wrong in rejecting the evidence which was offered to prove that Joseph Fox entered into the agreement of purchase, stated in the bill of exceptions, as the agent of John Fox." ·

This decision is entitled to great weight, as the case was heard and decided by all the Judges of England, except Lord DENMAN, who was absent; and seems to us to be conclusive authority in favor of the admissibility of the parol evidence here relied on to prove the contract of agency under which the plaintiff made the purchase.

We think this case is clearly distinguishable from *Lamborn vs. Watson*, 6 *H. & J.*, 252, and *Duvall vs. Peach*, 1 *Gill*, 172, and the class of cases to which they belong. *Duvall vs. Peach* seems to us to be altogether inapplicable.

The point there decided, as correctly stated in *Browne on Statute of Frauds*, 273, was that "an agreement to establish the title to land in any party, is equivalent to an agreement to sell him the land, and accordingly it was held in that case that an engagement to break down a certain alleged title, under which a third party claimed adversely, or in any way to perfect the title in the promissee, is within the Statute."

In *Lamborn vs. Watson* the contract which formed the basis of the suit was simply a contract that Watson should buy, and that Lamborn should have the privilege to redeem or re-purchase at the same price. This was the effect of the verbal contract.

In form the agreement was that Watson should bid off the land, and the intention seemed to be thus to prevent or baffle the sale, so as to give time to Lamborn, (the defendant in the execution,) to pay the judgment debt. Judge BUCHANAN

speaks of it as "an expedient to prevent an actual sale in order to gain time, which was not altogether free from exception."

The agreement was certainly not one constituting Watson as Lamborn's agent to buy for him, thus making Lamborn the real purchaser.

If such had been the agreement, there is authority for holding that Lamborn might have succeeded in a Court of Equity, in preventing his agent from defrauding him, and have secured the benefit of the purchase, as was decided in *Taylor vs. Salmon,* 4 *Myl. & Cr.,* 134; *Lees vs. Nutall,* 1 *Russ. & Myln.* 53, affirmed in *H. of L.,* 2 *Myl. & K.* 819; *Giddings & Coleman vs. Eastman and Wife,* 5 *Paige, Ch. R.,* 561; *Parkist vs. Alexander,* 1 *Johns., Ch. R.,* 394; *Brown vs. Lynch,* 1 *Paige, Ch. R.,* 147.

But looking at the facts of that case as they were shown by the evidence, and viewing the agreement according to its legal effect; and as parties must be understood to intend the legal consequences of their own acts, it followed of course, that if Watson bid off the land at the sheriff's sale, the effect would be, not to prevent a sale, but to consummate it, as a sale to Watson, and then the effect of the verbal agreement, if allowed, would be to bind Watson to re-sell to Lamborn at the same price; or to create a trust in him for Lamborn's use, which under the Statute, could only be proved by *writing;* and thus the case fell directly within the principle of *Bartlett vs. Pickersgill,* 4 *East.* (before cited,) and other cases of that kind, among which we may cite, *Hall vs. Shultz,* 4 *Johns. R.,* 240; *Sherrill vs. Crossby,* 14 *Johns. R.,* 358; *Van Alstine vs. Wimple,* 5 *Cowen,* 162; *Smith vs. Burnham,* 3 *Sumner,* 435; *Hogg vs. Wilkins,* 1 *Grant's Cases,* 67.

In the case last cited, Judge BLACK draws a distinction between the case then under consideration, and the case of a purchase of land by an agent employed for that purpose, and says that the agent might be compelled to convey, upon being refunded the price he paid.

We are of opinion, both upon reason and authority, that the parol evidence was admissible for the purpose of proving the employment of the plaintiff by the defendants as their agent; and that the Court below erred in its instructions to the jury, contained in the third bill of exceptions; and in refusing the first, second, third and fourth prayers of the plaintiff.

This view of the case renders it unnecessary to express any opinion upon the questions raised by the first and second bills of exceptions.

*Judgment reversed and*
*new trial ordered.*

(Decided 20th June, 1872.)

MILLER J., delivered the following dissenting opinion:

The prayers granted and rejected in the third exception make no reference to the pleadings, but present the broad question whether the proof shows a case entitling the plaintiff to recover in any form of action.

The evidence, which is without contradiction, shows that on the 1st of March, 1867, the defendants desiring to purchase a parcel of land in Delaware county, Pennsylvania, then about to be sold at sheriff's sale, and for the purpose of securing a debt due them by its owner, and not wishing to be known as the purchasers, requested the plaintiff to attend the sale and bid for and purchase the land for them at a price not exceeding $8,000; that plaintiff in company with defendants and their attorneys, attended the sale and bid for the land to the amount of $7,025, at which price it was knocked down to him and he gave his name to the sheriff as the purchaser; that he paid the sheriff $200 in cash, and the defendants immediately thereupon gave him their check for the same; that at the same time and in presence of the defendants and their attorneys, he and the sheriff signed an instrument of writing in which the terms of sale are stated; being in substance, that of the purchase money, $200 was to be paid in

cash and the residue on or before the fourth Monday of March, 1867, and in case of failure to comply, the land should be- re-sold at the purchaser's risk, he to derive no benefit from the re-sale, but to pay the deficiency between his bid and the price subsequently obtained, with all interest, costs and expenses, and upon complying with these conditions, the purchaser was to have a deed in due form on paying the customary fees, and by which the plaintiff signing his own name and affixing his own seal, acknowledged that the land was fairly struck off to him at his bid of $7,025, and for that sum acknowledged himself indebted to the sheriff and bound himself to pay the same agreeably to the above conditions of sale, and the sheriff at the same time signed a receipt for the $200 part of the purchase money; that the defendants then and there thanked the plaintiff for what he had done in the premises and promised to comply with the conditions, and pay the residue of the purchase money for the land when payable, according to the terms of sale, and that plaintiff should have no further trouble in the matter; that plaintiff directed the sheriff's deed for the land to be made to the defendants, and the time and place were appointed for the payment of the money and delivery of the deed, to which defendants assented, and expressed themselves as fully satisfied with the arrangement; that the parties met accordingly at the time and place appointed, when defendants said they were unable to procure the balance of the purchase money, and requested and obtained from the sheriff an extension of time for about six weeks, at which time they promised to pay the same, but failed to do so, and the land was afterwards re-sold by the sheriff at a less price, and purchased by a brother of the defendants; that plaintiff was thereupon sued by the sheriff for the balance of the purchase money on the first sale, and judgment was obtained against him on the 27th of February, 1868, for $3,749.87, with interest and costs, which he was compelled to pay under execution; that plaintiff frequenly called upon defendants to furnish the money for pay-

Baker *vs.* Wainwright Brothers.

ment of this balance of purchase money, and they frequently promised to do so and to pay the plaintiff for all his payments, trouble and expenses in the premises, and for that purpose assigned to him a claim on which he realized about $3,000. It was also proved that when the suit of the sheriff against the plaintiff came on for trial in the Pennsylvania Court, the defendants attended for the avowed purpose of defending the same, and there was a consultation between the defendants, their attorneys and the plaintiff in reference to that case and the proper course to be pursued, and it was agreed that judgment should be entered for the aforesaid sum of $3,749.87, with stay of execution for three months, at which time the defendants promised to pay the said amount, and at their request the judgment was entered accordingly.

The plaintiff seeks to recover so much of the money thus paid by him as remains unpaid by the defendants, with interest, costs and expenses, or in other words, for the loss and damage he has thus actually sustained. The defence set up is the 4th section of the Statute of Frauds, which the Court below sustained and held to be a complete bar to any recovery, by rejecting the prayers of the plaintiff and granting that of the defendants, to the effect that the evidence in the cause is not legally sufficient to entitle the plaintiff to recover. The claim is so manifestly just and the defence taken so dishonest, that I was anxious to be convinced the Statute did not apply, but after a most patient and careful consideration of the case and examination of the authorities, I have been unable to reach that conclusion, and cannot distinguish it in principle from the cases of *Lamborn vs. Watson,* 6 *H. & J.,* 252; *Duvall vs. Peach,* 1 *Gill,* 172, and other Maryland decisions on the same subject. The agreement or arrangement between the parties was a *verbal one* and amounts to this, that the plaintiff was to purchase the land *in his own name,* but for the defendants, who were to be the real owners and were to furnish the money at a future day to enable the plaintiff to meet his engagements with the sheriff, the vendor; or to state

it more favorably perhaps for the plaintiff, it may be termed a verbal contract or agreement by which the plaintiff was employed by, or constituted the agent of, the defendants to purchase the land for his employers or principals in his, the agent's *own name*, with the super-added verbal stipulations that the former were to be the owners or have the benefit of the purchase, and were thereafter to advance the money to enable the agent to fulfil the written contract which he was to make and did make in his own name with the vendor. The plaintiff's whole case rests upon a breach or failure by the defendants to perform their part of this verbal agreement. This lies at the foundation of his claim and must appear or be shown, under whatever form of action he may seek redress. The well known terms of this 4th section of the Statute are: " No action shall be brought upon *any contract* or sale of lands, tenements or hereditaments, or any interest in or concerning them, unless the agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing *signed by the party* to be charged, or some other person *thereunto* by him *lawfully authorized.*"

This lawful authorization need not be in writing, and it is well settled that a party may verbally employ an agent to make and sign the contract for him, but the agent so employed must make the contract in writing, and either sign the principal's name or his own name as agent for the principal, that is, he must so sign as to bind the principal and not himself. The execution of the agency is the discharge of the agent, who can neither derive a benefit under or suffer loss from the contract. In my judgment that is the extent of the authority to the agent which this section of the Statute contemplates. I am aware there are cases (*Ford vs. Williams,* 21 *How.,* 287; *Hubbert vs. Borden,* 6 *Whart.,* 79; *Oelrichs & Lurman vs. Ford,* 21 *Md.,* 489,) which decide that the agent and principal may be both bound by a written contract to which the name of the agent alone appears without any designation of agency or disclosure by the writing, of the

principal, and in such cases the undisclosed principal may also prove by oral testimony that the agent was acting for him, and may sue on the contract and take the benefit thereof, though the agent cannot escape his responsibility by proving in the same manner that he was contracting only as agent. But these are usually cases of commercial contracts by brokers or factors for the sale of goods or merchandise within the 17th section of the Statute, and I have not been able to find any case where the doctrine, that the undisclosed principal may in this way claim the benefit of the contract, has been applied to contracts for the sale or purchase of lands under the 4th section of the Statute. But even if any such adjudication could be found elsewhere, I am satisfied it cannot be reconciled with the decision of this Court in *Lamborn vs. Watson*, already cited.

In that case Lamborn, whose land was about to be sold under execution, perceiving it would not then sell for its real value, entered into a verbal agreement with Watson that he should bid it off *for and upon his, Lamborn's account*, to enable him to gain time to raise money to satisfy the execution. Watson did accordingly bid off the property in his own name at less than its real value, and afterwards, conceiving the design of turning the purchase to his own advantage, entered into a fraudulent engagement with the sheriff to retain the land for their mutual benefit, and refused to relinquish it to Lamborn, who had made an arrangement with the execution creditor to pay off all that was due him on the execution. Lamborn then sued Watson to recover damages for a violation of this verbal agreement between them, and the latter relied as a defense upon the Statute of Frauds. The Court said the Statute probably generates as many frauds as it prevents; that more disgraceful conduct than that of Watson and the sheriff had seldom found its way into a Court of Justice, and the defense set up was entirely of a piece with it; yet they were constrained to sustain that defense, and to deny the plaintiff all right of recovery, because they could not do

otherwise without overturning the Statute. It would have been an easy solution of the difficulty, and the Court would have been spared the expression of their just indignation at the wrong thus successfully perpetrated, if they had supposed Lamborn could have proved the verbal agency, and claimed as an undisclosed principal the benefit of the contract of purchase made by Watson, as his agent, with the sheriff. The idea that such a remedy was open to him did not occur either to the counsel or the Court, but, on the contrary, in face of the argument made by the plaintiff's counsel, that the consideration in the verbal agreement was sufficient, if it was for the benefit of the plaintiff and not prejudicial to the defendant, and that where a party undertakes to act in a trust he is answerable, 'the Court, in plain terms, say : " If the plaintiff could be permitted to recover on this agreement, there is no case in which the Statute could prevail, and it would become a dead letter;" and that "Courts of Law cannot entertain actions upon verbal contracts within the Statute, on the ground of fraud in refusing to perform them."

From this it seems to me quite plain, that if the plaintiff, in this case, after making the written and sealed contract with the sheriff, had found he could make money out of the purchase, and had chosen to hold on for himself, he could have set the defendants at defiance by relying on the Statute as a defense to any action they could possibly bring against him. They could neither recover the land nor damages for a violation on the part of the plaintiff of the verbal agreement between them, and thus they would have been deprived of all benefit of that agreement. That being the case, I am unable to perceive how a different result can follow from a breach of the same agreement by the defendants. It cannot be out of the Statute for one party and within it for the other.

It also appears to me that the law announced in *Hollida vs. Shoop,* 4 *Md.,* 465, is quite inconsistent with the idea that the Statute is inapplicable to the present case. In that case it was held that a parol agreement between two persons to purchase

land, one of whom was to purchase, and each to pay one-half the price and take one-half the land, was within the Statute, and the party who did not make the purchase could derive no benefit from the contract. The Court also there quote, with approbation, the case of *Fanke vs. Haughteer,* 3 *Marshall,* 57, to the effect that if a party buy land *in his own name* and on *his own credit,* the Statute is applicable, and it cannot be proved by parol that the purchase was for another's benefit. How can this doctrine be reconciled with the decision that the party thus purchasing *in his own name* may be treated as the *agent* of another? If this doctrine of agency is allowed in such cases, then parties who have made advantageous purchases of real estate in their own names, may find themselves converted by parol testimony into agents of others who can claim the benefit of their contracts, and thus a way will be opened for the commission of the very frauds and perjuries which it was the chief purpose of the Statute to prevent.

Entertaining these views, I am of opinion the rulings in the third exception should be affirmed. A majority of the Court have however reached a different conclusion, and are of opinion the Statute is no bar to a recovery by the plaintiff in this case. The result is, the judgment must be reversed on this exception and a new trial awarded. I agree that a reversal on this ground renders the expression of any opinion upon the questions raised by the first and second exceptions entirely unnecessary, as they will become wholly immaterial in the further progress of the cause.