784

## SUPERIOR COURT OF BALTIMORE CITY.

Filed October 18, 1928.

CARRIE M. BUETTNER
VS.
SCHLUDERBERG-KURDLE
COMPANY.

*Walter L. Clark* for plaintiff.
*William D. Macmillan* for defendant.

FRANK, J.—

The declaration in this case consists of the six common counts and a seventh count, which is as follows:

"And for that on or about May 13th, 1927, Louis Reighart, an employee of the Schluderberg-Kurdle C o m p a n y, while working in the regular course of his employment was seriously injured by a crushing blow on the head, and it became necessary that he be immediately removed to a hospital and that he receive medical attention. Whereupon certain employees of the defendant company as duly authorized agents of the defendant undertook to take the said Reighart to St. Joseph's Hospital. While on the way to the said hospital the car in which the said employees were riding was stalled and it became impossible for them to proceed; whereupon the defendant by its duly authorized agents and servants requested the plaintiff, who was passing in her automobile, to take up the said employees and drive them with the said Reighart to the said hospital, which the plaintiff thereon undertook as agent of the said defendant company to do. And the plaintiff says that the defendant company thereby agreed to pay all damages and expenses reasonably incurred by the said plaintiff without her fault in the performance of the said request.

"While so engaged in the performance of the said duties required of her by the said defendant company and without any fault on her part, her said automobile was run into and seriously damaged by an automobile belonging to one Eva Harrison, and because of said collision the plaintiff has suffered great damage and injury.

"The plaintiff says that she has done everything required of her to entitle her to reimbursement for the said damage and that she has requested the defendant company to so reimburse her, but the defendant company has refused and still refuses to do so."

The count of the declaration under attack alleges that the duly authorized agents and servants of the defendant requested the plaintiff to drive them in her automobile, together with the injured employee, to St. Joseph's Hospital, and the plaintiff undertook to do this as agent of the defendant. Thereby she says the defendant agreed to pay all damages and expenses reasonably incurred by her without her fault in the performance of said request, and that while so engaged in the performance of said duties without any fault on her part her automobile was run into and damaged by the automobile of a stranger, whereby she has suffered great loss and damage.

The demurrer admits, of course, the allegations of fact; it does not admit the legal conclusion that "the defendant company thereby agreed to pay the damages and expenses reasonably incurred by the said plaintiff without her fault in the performance of said request." That, of course, is a conclusion of law and not admitted by the demurrer.

A contrast between the authorized agents of defendant and plaintiff is thus set up, which is alleged to have the effect of constituting her defendant's agent. "If an agent has, without his own fault, incurred losses or damages in the course of transacting business of his principal, he will be entitled to full compensation therefor." Baker vs. Wainwright, 36 Md. 336-347; Rosenstock vs. Tormey, 32 Md. 169-177; Wyeth vs. Walzl, 3 Md. 426-433.

Mr. Mechem, in Volume I, of the Second Edition of his work on Agency, Section 1600, states the rule as follows:

"The agent may also in executing the principal's commands, expose himself to legal claims, or incur legal obligations to third persons who are injured by the fact or the manner of the agent's execution of the principal's directions. In either case, the agent may have a claim against his principal by reason of the expense or liability thus incurred."

In Section 1601 of the same work, Mr. Mechem states the reason for the rule in these terms:

"The performance of the agency is undertaken for the benefit of the principal. To him belong all the profits and advantages resulting from its execution. He is also entitled to all the profits and advantages acquired by the agent during the course of the performance. It is eminently just and proper, therefore, that the principal should bear the natural and legitimate burden of the transaction and that the agent should not be called upon to suffer loss or injury for his acts done in the proper discharge of his duties."

In order that we may understand the real meaning of these general statements of the duty of the principal to the agent, it is necessary to see how they have been applied in the adjudicated cases. In Rosenstock vs. Tormey, supra, the agent, a stock broker, pursuant to principal's orders, had purchased shares of stock in New York through New York stock brokers. The principal failed to pay for the stock and the agent, pursuant to established usage, sold the stock and a loss was incurred. Of course, the principal was bound to reimburse the agent for this loss. In Baker vs. Wainwright, supra, the principal requested the agent to attend a public auction and purchase certain land for not more than $8,000. The agent bought the land for $7,025. The principal failed to put up the purchase price, the property was resold and a judgment was recovered against the agent for the deficiency which was collected under an execution against him. Obviously, the agent was entitled to reimbursement from his principal. The facts and decision in Wyeth vs. Walzl, supra, are to like effect. In Green vs. Goddard, 50 Mass. 212, the agent paid unaccepted bills drawn by him upon the authority of his principal in order to protect the latter's credit, without waiting for them to be returned, when the rate of exchange would have been considerably lower. It was held that he was entitled to full reimbursement. In Bibb vs. Allen, 149 U. S. 481, as in Rosenstock vs. Tormey, supra, stock brokers were held entitled to be made whole for expenditures made on behalf of their principal. The opinion states that the agent "has the right to be reimbursed for all his advances, expenses and disbursements incurred in the course of the agency made on account of or for the benefit of his principal when such advances, expenses and disbursements are reasonable and have been properly incurred, and paid without misconduct on the part of the agent. If, in obeying the instructions or orders of the principal, the agent does acts which he does not know at the time to be illegal, the principal is bound to indemnify him not only for expenses incurred but also for damage that he may be compelled to pay to third parties." Page 498. The cases in which the agent has been held to be entitled to be reimbursed for losses incurred by him in the performance of his agency may be grouped in classes:

First: Where the agent, himself, without fault, but owing to the default of the principal, has in the performance of the agency been required to pay out money. Rosenstock vs. Tormey, supra; Baker vs. Wainwright, supra; Wyeth vs. Walzl, supra; Greene vs. Goddard, supra; Bibb vs. Allen, supra; Adams vs. Morgan & Co. (1923) 2 K. B. 234; D'Arcy vs. Lyle (Pa.) 5 Binney 441; See cases cited in note 73, Section 1601, page 1199, Vol. I, Mechem; Agency (2nd Ed.).

Second: Where the agent himself without fault, as a consequence of

the performance of his duties, has subjected himself to civil action in which judgment has been recovered against him which he has paid, or where he has won the suit and has incurred expenses, or where he has effected a reasonable and proper compromise. Walton vs. Hamburg (1707) 23 E. R. 985; Pettman vs. Kible (1850) 9 C. B. 701; Williams vs. Lister, 109 L. T. 699, distinguishing; Halbronn vs. Int. Horse Agency (1903) 1 K. B. 270; Stocking vs. Sage, 1 Conn. 519; 1st Natl. Bank vs. Tenney, 43 Ill. App. 544; Powell vs. Trustees, 19 Johnson (N. Y.) Rep. 284; the case assumed by the Court in DuPuy vs. Crucible Steel Co. (Dist. Pa.) 288 Fed. 583; see the distinction drawn by the Court in People vs. Esopus, 74 N. Y. 310.

Third: Where the agent himself without fault, has subjected himself to criminal prosecution as a result of the performance of the purposes of his agency, has paid a fine or having given bail for his appearance has forfeited the same, in order to carry out his duties as agent. The James Seddon (1867) 15 L. T. U. S. 636.

Mechem states the result of the cases as follows:

"If in the direct performance of such an act (i. e., one done by the direction and for the benefit of the principal) the agent invades the right of third persons and incurs liability to them, the loss should fall rather upon him for whose benefit and by whose direction it was done, than upon one whose only intention was to do his duty to his principal." I Mechem, Sec. 1603.

Two cases have held to the contrary of the above. The authority of one of these, Halbronn vs. Int. Horse Agency, supra, has been greatly impaired, if not destroyed, by later decisions. The other, DuPuy vs. Crucible Steel Co., supra, was decided upon considerations of public policy not involved in the case now before this Court.

The present case differs from the cases thus cited in that the plaintiff has not had to pay out any money, or been subject to any civil or criminal proceedings, for which she claims reimbursement. Her automobile was damaged by a third person without any fault on her own part.

Obviously, in discussing the extent of the principal's liability to his agent

some limit thereto must be defined. No man may be held to unlimited liability for his acts or omissions, otherwise the risk of loss would be so indefinite as to inhibit all action. Where is the frontier line to be drawn, and does plaintiff's claim herein fall within such line?

Mr. Mechem places the boundaries of the principal's liabilities as follows:

"Liability must be a direct consequence of the execution of the agency. It is, of course, not enough to entitle the agent to indemnity that the loss or injury happened while he was acting as agent; it must be a direct and natural consequence of the execution of the agency. Thus for an injury caused by the wrongful or negligent act of a third person, for which the execution of the authority gave perhaps the opportunity, but of which it is not the legal cause, the principal would not be responsible. If, for example, a broker while going upon his principal's business, should be waylaid by a robber, or if a traveling salesman, going from town to town, should be injured by the negligence of a carrier, the principal would not be liable any more than he would if the agent, during the existing of the agency should contract a contagious disease or be struck by lightning. As has already been stated, the injury for which indemnity is sought, must be the direct and natural consequence of the doing of that which the principal directed to be done." Mechem; Agency (2nd Ed.), Sec. 1604. See also Section 1603, supra.

Mr. Mechem is able to adduce but little authority for this statement, however sound it may be upon principle. The weight of Halbronn vs. Int. Horse Agency (1903) 1 K. B. 270, has as has already been shown, been greatly impaired. DuPuy vs. Crucible Steel Co., 288 Fed. 583, and Mills Co. vs. Dunbar, cited therein, were decided upon principles not strictly applicable to the facts of the case at bar.

No authority directly bearing on the question herein involved other than the text book authority above set out has come to my notice, and it, therefore, becomes necessary to consider the question raised by the demurrer without the aid of precedent so helpful to the Court in the decision of legal questions.

The allegations of the seventh count, above reproduced, set up a cause of action in contract. If there could be any doubt on this score it would be dispelled by the fact that the seventh count is joined with the six common counts, and this might not properly be done if the seventh count were to be held as sound in tort. The questions raised by the demurrer to this count must, therefore, be considered from the standpoint of an action ex contractu, or at least quasi ex contractu, and solved on that basis.

This consideration is important when, as here, the Court is called upon to determine the responsibility of the defendant for consequences flowing from his course of action. The rules governing the decision of this question may differ widely where the cause of action is in contract from where it is in tort. In tort, the defendant is to be held liable for the violation of a duty imposed by law. In contract the parties themselves, by their mutual agreement, set the bounds to their respective rights and obligations. "In contract—the rule is that a party can recover only for such injuries as usually, normally or customarily are the result of the breach, or such as are rendered probable by reason of exceptional circumstances known to both parties, and in reference to whose existence the contract was made." Bohlen, Studies in the Law of Torts, page 3.

In tort, on the other hand, the defendant's obligation growing out of his breach of duty imposed by law may be much wider and extend to all results which may be regarded as the proximate result of his wrongful act. Chief Judge Bond, in the recent case of A u t o m o b i l e Insurance Co. vs. Thomas, 153 Md., at 257, thus discusses this distinction:

"There is a distinction to be observed between causes of loss for which liability is imposed by law, in tort and causes of loss for which a party may have contracted to be liable. The tests are not the same for both obligations, although in particular instances the causes for which liability attaches might be included under each test. We are aware that some Courts have declined to accept this view, but we have not been able to agree with them. In the course of the

discussion in Leyland Shipping Co. vs. Norwich Union Fire Ins. Co. (1918) A. C. 350, 369, on the cause of loss to an insured vessel, Lord Shaw said: 'The true and the overruling principle is to look at a contract as a whole and to ascertain what the parties to it really meant. What was it which brought about the loss, the event, the calamity, the accident. And this is not in an artificial sense, but in that real sense which the parties to a contract must have had in their minds when they spoke of cause at all.' And in Bird vs. St. Paul Fire and Marine Ins. Co., 224 N. Y. 57, the Court, Cardozo, J., said: 'General definitions of a proximate cause give little aid. Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract.' And this we take to be the one guide consistent with the function of deducing the obligation from the agreement of the parties, rather than imposing an obligation on them. Transatlantic Fire Ins. Co. vs. Dorsey, 56 Md. 70; Bower & Kaufman vs. Bothwell, 152 Md. 392."

This statement is made with reference to indemnity against loss by fire under a fire insurance policy. Should it not fairly be applicable to an indemnity against loss under a contract of agency?

The principal employs the agent to carry the injured employee to the hospital. Liability would result for the actual cost of so doing, as, for example, the purchase of gasoline, etc., necessary so to do. He has an accident, not due to his fault. It may be fairly contended that he should be protected to the extent of the expenses incurred by him in defending himself from criminal or civil liability. Three possible situations might exist with respect to such an accident as is alleged as the basis of this action.

1. If the collision were due solely to the fault of the third party, it cannot be regarded as one contemplated by the contract of agency. Even in the law of tort such fault would be regarded as an independent intervening agency, breaking the chain of causation and screening the principal from legal liability.

2. If the collision were due to no fault on the part of either the third person or of the agent, but to some-

thing so unusual and infrequent as an inevitable accident for which neither party thereto may be held accountable at law, it is neither a proximate result of the agency nor one within the contemplation of the parties to the relationship of principal and agent.

3. If the accident were due to the fault of the agent, a possibility which is specifically negatived by the allegation of the declaration, all of the authorities hold that the agent is not entitled to indemnity for the resulting loss.

The seventh count alleges that the plaintiff was without fault in the accident which damaged her car. The pleading must be taken most strongly against the pleader. If the plaintiff desires to rely upon an unavoidable accident as having been the proximate cause of her loss, the burden of so alleging rests upon her. In the absence of such an averment, the language of this count may be fairly construed as charging the sole fault to the third party, one Eva Harrison, and it will be so considered and treated herein. If that be the case, then plaintiff would be entitled to recover damages against the person who wrongfully caused the same. Should she not be required to prosecute an action for such damages, establish therein her freedom from fault, and then seek reimbursement from her principal for the actual expenses to which she was put? It is her duty to her principal to minimize her damages. If she recovers against him, he would be in no position to prosecute her claim against the wrongdoer. His relationship to her is not such as that, having paid her damages, he would be subrogated to her rights in an action against the wrongdoer. Having been compensated by him, she might at her own will refuse to prosecute her claim against the wrongdoer and thus leave him without an opportunity to recoup his outlay.

In the cases already cited, in which the principal was required to compensate the agent, claim had been made by a third party against the agent which had either been prosecuted to judgment or been compromised under circumstances held to justify such settlement. Even in this class of cases the whole weight of authority holds that the agent's right of action does not arise, as a general rule, until he has discharged such liability. 2 C. J., p. 797, Sec. 760. That is to say, the agent, as the alter ego of the principal, had incurred liability, the liability in fact of the principal. The absolving of this liability by the agent left the principal after he had indemnified the agent, in exactly the same position as if he himself had directly and primarily satisfied the creditor. In the case at bar, the principal would have imposed upon him a responsibility for which in justice he should not be held accountable, because the agent has an adequate remedy against the guilty third party. If the principal himself had been driving the automobile at the time of the accident, he, likewise, would have had a right of action against such third party.

The instant case, so far as I have been able to find, is absolutely without precedent, in that the agent claims reimbursement from the principal in a case where, upon her own statement, she would be entitled to recover compensation from the wrongdoer. This is an attempted extension of the principal's liability for which I can find no justification upon principle or authority.

The demurrer will be sustained, with leave to the plaintiff to amend within thirty days.