## JOHN W. HOLLIDA *vs.* ADAM SHOOP and others.

Two parties made a parol agreement to purchase land jointly, but the purchase was made by one alone on *his own credit*, who gave bond for the purchase money, occupied the property many years, sold and conveyed a part of it, but subsequently proving unable to advance his share of the purchase money, it was advanced by the other, who took a conveyance of the whole in fee. HELD :

That judgments rendered against the party who made the purchase, *prior* in date to the conveyance, are liens upon his interest in the land, but as to those rendered *subsequently* to that period, the party to whom the conveyance is made is entitled to relief by a perpetual injunction.

To establish by parol a resulting trust, there must be the clearest and most indisputable proof, that the purchase was made for the party claiming such trust, and the purchase money paid by him.

Where a purchase is made by one in *his own name* and upon his *own credit*, the statute of frauds is applicable, and it cannot be proved by parol that the purchase was for another's benefit.

A *subsequent* advance will not attach by relation, a resulting trust to the original purchase, for this trust arises from the fact that the money of the real and not of the nominal owner, formed *at the time* the consideration of that purchase, and became converted into land.

After a purchase with a party's own money or credit, a subsequent tender or reimbursement by another, may be evidence of some other contract, or the ground of some other relief, but cannot by any retrospective effect produce a resulting trust.

APPEAL from the Equity Side of the Circuit Court for Washington county.

This appeal was taken from the decree of the court below,

dismissing the bill of the appellant, filed in that court on the 4th of September 1847. The allegations of the bill and answers and the proof which is voluminous, are sufficiently stated in the opinion of this court, and in the following opinion of the court below, delivered by PERRY, J.

"The bill in this case states, that the contract for the sale of the land was made with Grove, the complainant being understood to be jointly interested, and that Grove subsequently proving incapable and insufficient to advance his share of the purchase money, it was paid by complainant, amounting to the sum of $4999, and some interest, and that having paid Grove's share of the purchase money, the judgments against Grove, cannot in a court of equity impair the rights complainant has acquired by such payments, and that this court will interfere to protect him. There is no testimony showing the date of the sale, but by the report of the executors of Lynch made to the orphans court of Washington county, dated the 14th of June 1836, it appears that on that day Grove purchased 340 acres of land, at $20 per acre, making in all $6800, and on the 14th of September 1840, he purchased another tract containing 110 acres, at $20 per acre, making $2227.50. The defendant shows by a deed dated the 20th of May 1843, that Grove and Finley (the executor of Lynch,) conveyed to Steven Butterbaugh, 200 acres of the land purchased from Finley for $6000, and that $5000 of that sum was paid to Finley, at the instance and by the authority of Grove, and the residue of the $6000, was to be paid on or before the 1st of April 1844, in the same manner. The land sold to Butterbaugh, was part of the land purchased by Grove from Finley, executor of Lynch, and in which the complainant was understood to be jointly interested. The amount of purchase money with interest, for the land sold to Grove up to the sale to Butterbaugh, makes near $6350, and if we add the costs of the suit against Grove, instituted at the instance of Finley, (as by the copies before me,) the aggregate indebtedness was about $6500. By deducting the payment made by Butterbaugh, a balance remained unpaid to

Finley of about $2500. The complainant claims the unsold part of the land purchased from Finley, upon the grounds that the payment of the purchase money by him, establishes a resulting trust, &c., and the execution creditors cannot claim a right greater than that which exists in Grove. There can be no doubt, that if there is an uncertainty whether the money was paid by the complainant to the vendor, through the agency of Grove, and not advanced to Grove for his accommodation, that then that would prevent my passing a decree perpetuating the injunction, it being dangerous to trust such testimony, the law requiring total absence of doubt in that respect. 2 *Sugden on Vendors*, 138. *2nd Johns. Ch. Rep.*, 412. *Bostford vs. Burr*, in which case (being a trust of a similar kind,) the chancellor says, that there is great danger in giving much latitude to implied trusts founded on naked declarations, in opposition to the solemnity and certainty of written documents; and that the question was whether the money was advanced as a loan or as a payment by the plaintiff to the vendor. In the testimony of Grove, there is nothing to show that Hollida paid the whole purchase money, as the vendee of Finley. The extent of his evidence is, to show that the money of Hollida was paid to Grove, and was by him applied to discharge the claims due from him on account of the land, to the extent of four thousand, nine hundred and ninety-nine dollars and some interest, which paid a part of the purchase money due on all the land, and if he had a resulting trust, or equitable title for the money paid, it existed or attaches to the whole, and not to the part unsold, and to protect which the injunction has been prayed. The trust or lien would as well affect the part sold to Butterbaugh, as that which was conveyed to Hollida. If the parties had made a partition and designated the portion which the complainant should have, and had by agreement applied the payment of the money to the discharge of the purchase money, on the part now in controversy, then there might be much less difficulty in the case. But what is the proof? The witness says that part of the land was sold to Butterbaugh, for the purpose

of paying his (Grove's) half of the purchase money, Hollida having paid what was regarded as his share. The bill does not aver that the complainant was to have paid the whole purchase money. And that part of the testimony of Grove, in which he says, that Hollida was to have furnished it and did do it, is not consistent with the bill, and is not supported by the plain facts in the case. Indeed it is difficult to reconcile the inconsistencies of this evidence in one or two respects. He says, Hollida did pay all the purchase money, and then says the land was sold to pay what was supposed to be his half of it. The statement which he makes, in regard to the manner in which the money paid by Butterbaugh was exhausted, (being used to pay costs and interest,) is not borne out by the facts, as the interest and costs due to Finley at that time, (as shown by the proof before me,) did not exceed nineteen hundred dollars; and the purchase money being six thousand dollars. I was disposed to furnish the witness with an excuse for this departure, from the plain conclusions of the testimony, but no charity could sustain him. When the deed executed by Finley and Grove to Butterbaugh, was examined by the recitations of that instrument, it will be seen, that on the 20th day of May 1843, the sum of five thousand dollars, was paid to Finley, (the vendor,) at the instance and by the authority of Grove, and the balance of the six thousand dollars was to be paid, on or before the 1st of April 1844, in the same manner. The witness evidently wishes it to be believed, that the proceeds of the sale made to Butterbaugh, did not liquidate any part, or if any, a very small portion of the principal, as then due on the land. But when it is seen that it did pay all the interest and a large part of the principal, and only left a balance of about $2500, no one can doubt that there is on the part of the witness great mistake. If the witness has stated the fact accurately, then the complainant has not in his bill stated the amount he really has paid. He claims to have paid the sum of four thousand, nine hundred and ninety-nine dollars, and some interest. The bill states that the complainant paid the purchase money. The testimony

of Grove in answer to the 5th interrogatory, is, that Hollida has furnished as much money as paid his half of the land, and it took the two hundred acres to pay the witness' half; and in his answer to the 6th interrogatory, says, that it did not pay more than the interest and costs, that had accumulated on the original sales, and Butterbaugh had to pay some of the purchase money on judgments that stood against him. I have already stated that the witness must be in error, when he swears that the six thousand dollars paid to Finley, was exhausted in the discharge of the interest and costs, &c., as the entire interest and costs could not exceed nineteen hundred dollars. Thus leaving a large excess to be applied to the Finley claim. Under such circumstances Hollida could not, and indeed did not pay the money as averred in his bill. The proceeds of the land sold to Butterbaugh, was understood and intended to be applied to pay the part for which Grove was liable, and in no event could he be answerable for that amount, after such proceeds was paid to Finley. Neither the bill or the witness seeks to establish the payment by Hollida, of any part of the money through the sale of the land to Butterbaugh. The answer of the witness Grove, to the 1st and 3rd interrogatories, states, that the money was furnished and advanced to him by Hollida, and in the absence of such a pretence, and believing as I do, that the amount which the complainant says he paid, was not, indeed could not have been paid, and the law requiring the strongest proof in cases of this character, to establish a resulting trust, I have determined to dismiss the complainant's bill and dissolve the injunction. It may be thought proper that I should pass a partial decree, that is a decree protecting Hollida in the possession of an undivided part of the land, or inforce his lien for the money he really paid, &c. This could not be done, as the proof shows the witness in such a questionable light, and leaves the amount (if any) he paid, in such doubt, that I cannot feel safe in so doing. The bill is not for the enforcement of an equitable lien, either for the whole or part of the purchase money, and if it were, the reasons already assigned for

refusing to give relief upon the testimony of Grove, will apply as well to the whole as to a part. The evidence all being parol and received with great caution, see *2nd Sugden on Vendors*, 158; 10 *Ves.*, 517, where it is stated, that the admission by parol, and testimony in which no fact or circumstance is sworn to, which was capable of being contradicted, and there being no corroborating circumstances, and standing unsupported, and in some degree contradicted by the circumstances, was enough to induce the court to refuse the application of the trust, &c. See also *Hilliard on Real Property, ch.* 23, *Placitum,* 15, *page* 211. The author says, in regard to implied and resulting trust, that the payment of the money must be clear and undoubted, of so positive a character as to leave no doubt of the fact; and at the same time so clearly define the trust, as the court may see what is requisite for its due execution. Evidence of naked declarations, made by the nominal purchasers, is most unsatisfactory, being so easily fabricated, and from the impossibility of contradicting it, &c. Grove is the brother-in-law of Hollida, and nothing is before the court but his testimony to sustain the case, and that so much contradicted by the circumstances, that I have determined to dissolve the injunction and dismiss the complainant's bill as to all the land."

The cause was argued before LE GRAND, C. J., ECCLESTON, MASON and TUCK, J.

*Jervis Spencer* for the appellant, after stating the facts of the case, insisted, that Grove not having the legal title, and never having had any equitable title by virtue of any payment, there is no ground for a levy on the land to satisfy the judgments, and the proceedings under them are vexatious and will be restrained in equity. 2 *Story's Eq.*, sec. 1201. We are not attempting to set up a resulting trust, and if we were the proof is sufficient for the purpose and is uncontradicted. The case in 2 *Johns. Ch. Rep.*, 405, *Bostford vs. Burr*, and the authority in *Hilliard on Real Property*, referred to in the

opinion of the judge below, would sustain our right to a resulting trust, even if the conveyance had been made to Grove. The principle is, that the facts must be clearly proved; this is done if Grove is credited, and it would outrage every rule of evidence to discredit him when he is not impeached. All the essential facts which explain conclusively his inability to pay, could, if false, have been disproved by a hundred witnesses. We have satisfied the rule which requires two witnesses, or one with pregnant circumstances, to overthrow the answer. The proof on the other side is simply that the purchase was made in the name of Grove, and that is contradicted by the solemn recitals in our deed, and besides the denials in the answer of Enswinger were not made upon *personal* knowledge.

*R. H. Alvey* for the appellees. Every essential averment in the bill is flatly denied by the answer, which must stand, unless contradicted by two witnesses, or one with pregnant circumstances; the testimony of but one witness is insufficient. 6 *Gill*, 391, *Methodist Church vs. Mayor and C. C. of Balto.*

The purchase was made in 1836, by *Grove*, who gave the bonds for the purchase money, and was returned as the sole purchaser by the executor under oath; the executor charges himself in his accounts with money received from Grove, and instituted suits against him to recover the balance of the purchase money. Grove remained upon the land for ten years, and there is no evidence that he ever paid a cent of rent to any one. But more than all, he sells a part of the land and receives $6000 of the purchase, and he and *his wife* join in the conveyance of it.

We are not attacking the deed, but seek to go *behind* it in order to get at the equitable interest which *Grove* had in the land before its execution by virtue of his original purchase. That he had such interest, see 3 *Atk.*, 326, and 2 *H. & J.*, 64. In order to defeat our rights, the complainant must show that there was a resulting trust to him *before* the deed was

executed, which cannot be done. 3 *Wend.*, 637, 651. The proof as to a resulting trust must be clear, and that the money was paid *at the time.* 10 *Ves.*, 519, *Lench vs. Lench.* 8 *Gill*, 357, *Hays vs. Hollis.*

It is admitted that it was by a *subsequent* arrangement that the purchase money was paid by Hollida. But creditors not being cognizant of such agreement, if there was one, cannot be affected by it; it is within the statute of frauds. 1 *Hilliard on Real Property*, 311. 1 *Munford*, 510. 4 *Bibb*, 102. But Grove proves that he paid some of the purchase money and made improvements upon the land, and we are entitled to levy upon his interest in the land, whatever it may have been.

LE GRAND, C. J., delivered the opinion of this court.

The object of the bill in this case is to quiet the title of the appellant, and to restrain the execution of certain judgments obtained against William Grove. It substantially alleges, that the complainant and Grove, in the year 1836, *entered into an arrangement jointly to purchase of a certain Michael A. Finley,* executor of Samuel Lynch, deceased, certain real estate; that Grove residing in the neighborhood of the lands intended to be purchased, the negotiations and transactions relating to the purchase were confided to him; and that the contracts were made with Grove, the complainant being understood to be *jointly* interested in the same. The bill further avers, that Grove subsequently proving incapable and insufficient to advance his share of the purchase money, the same was paid by complainant, and that on the 6th day of October 1846, Finley, the executor of Lynch, and Grove and wife, executed and delivered to him a deed in fee for the land purchased of Finley. It is also averred, that the defendants, having judgments against Grove, have caused executions to issue thereon, and to be levied on the land purchased of Finley and conveyed by him, Grove and wife, to complainant. The prayer of the bill is, that the sale of the land may be restrained and title of complainant decreed to be good and quieted, and for general relief.

The defendants severally answered the bill. The answer of Enswinger, which, so far as its averments and denials are concerned, is adopted by the defendant Dillinger, denies that the complainant and Grove purchased the land jointly, and insists that Grove was bound to pay the whole of the purchase money. It denies that the whole purchase money, or the pretended share of Grove, was advanced by complainant. The answer also further avers, that Grove purchased of Finley, in two purchases made in 1836 and 1840, four hundred and fifty acres of land, for the sum of $9027, and that in the year 1842, Grove sold to Stephen Butterbaugh two hundred acres of said land, for the sum of $6000; that Grove not having the legal title to the land, Finley joined with Grove and wife in the deed to Butterbaugh. It is also stated that the $6000, the consideration in Butterbaugh's deed, were paid to Finley on account of the entire purchase of the four hundred and fifty acres.

Adam Shoop and Israel Knodle disclaim all interest in the proceeding, alleging that they have assigned their judgments to persons at whose instance executions have issued.

The proceedings show that the sales were made by Finley to Grove, and reported to and confirmed by the orphans court as sales made to Grove; and also that Grove gave his single bills for a part of the purchase money, on which suits were brought in Washington county court, and for which four several judgments were obtained.

To sustain the case made by the bill William Grove was examined. He testified in substance, that the purchases were made in his own name, and that complainant was not named in the transaction, but that it was agreed between them the complainant should furnish the money, which he did. The depositions of Grove assigns various reasons why the transaction was conducted in his name without reference to complainant, the principal of which is that he lived near the land, whilst the complainant resided in Virginia.

On this state of case we are of opinion the complainant is not entitled to the relief he asks, except as to the judgment

60     v.4

of Enswinger, which is subsequent in its rendition to the date of the deed of Finley, and Grove and wife, to Hollida.

We do not deem it important to inquire whether the testimony of Grove is supported by the circumstances attending the sales made by Finley, and ratified by the orphans court of Washington county, as made to Grove alone. It is clear from the evidence, that the $6000 paid by Butterbaugh for a portion of the land were paid to Finley, in part payment of the original purchase money; and also that Grove gave his obligations for a portion of the latter, and that judgments against him were recovered on these single bills. It is also equally incontestible that he publicly dealt with the land as though he alone was the owner. These facts militate against the theory of the case of the complainant as set up in his bill. But even were it conceded, *ex gratia argumenti*, that the testimony of Grove fully and completely sustained the bill, still the inquiry would be, is the complainant on such a case entitled to the relief he asks? And we think he is not. On the payment of the purchase money Grove would have been entitled to a deed from Finley. This right could not have been defeated by Hollida, except on the ground that the land was purchased for him and that he paid the purchase money, and to establish these facts the testimony must be of the clearest and most indisputable character; for, in its nature, it is an effort to establish by parol a resulting trust. *Faringer vs. Ramsay*, 2 *Md. Rep.*, 365.

In the case of *Parker vs. Bodley*, 4 *Bibb*, 102, it was held, that an agreement by parol between two persons *to purchase* land, one of whom was to make the purchase, and each to pay one-half of the price and take one-half of the land, was within the statute of frauds, and no trust results in favor of the party who did not make the purchase, although the statute speaks not of contracts *to purchase*, but for the *sale* of land, &c. Now this is precisely the agreement set out in the bill in this case. And if we look to the facts in the case, independently of those testified to by Grove, the case is equally within the statute. It has been held that if A buy in his *own*

*name* and upon *his own credit*, the statute of frauds is applicable; and it cannot be proved by parol evidence that the purchase was for another's benefit.   *Fowke vs. Haughlier*, 3 *Marshall*, 57.

If Hollida have any right as against the judgment creditors, whose judgments are prior in date to the deed from Finley, Grove and wife, to him, it must arise from the alleged payment by him of the whole purchase money.   But, it is beyond dispute, the sale was made to Grove, and *on his credit*, for he gave his obligations for a portion of the purchase money.   Any *subsequent* advance by Hollida would not be sufficient to create a resulting trust in his favor.   To use the language of Chancellor Kent, in the case of *Botsford vs. Burr*, 2 *Johns. Ch. Rep.*, 409, a subsequent advance "might be evidence of a new loan, or be ground of some new agreement, but it would not attach, by relation, a trust to the original purchase; for the trust arises out of the circumstance that the moneys of the real, and not of the nominal purchaser, formed *at the time* the consideration of that purchase, and became converted into land."   In the same case the learned chancellor remarks, "after a purchase with his own moneys *or credit*, a subsequent tender, or even reimbursement, may be evidence of *some other contract*, or the ground of some other relief, but it cannot, by any retrospective effect, produce the trust of which we are speaking.   There never was an instance of such a trust so created, and there never ought to be."

From this it is manifest that the complainant is not entitled to relief as against the judgment creditors prior to the date of his deed.   That conveyance could not affect liens which had previously matured; and under our act of Assembly of 1810, ch. 160, equitable interests in lands are bound by judgments against the party having the equity.   The deed could only convey the title, subject to the incumbrance then on the property.

We affirm so much of the decree of the court below as dissolves the injunction, and dismisses the bill of complainant as against the judgment creditors, whose judgments are prior

to the 6th October 1846, the date of the deed to Hollida, and reverse it so far as it has reference to judgments rendered since that time. In regard to these latter we perpetuate the injunction.

*Decree affirmed in part and reversed in part.*