(Decided 22nd June, 1876.)

ANN E. KELLER, by HENRY B. WILSON, her next friend, *vs.* JACOB KELLER of J., MANASSES CREAGER, Trustee, and others.

*Resulting Trust—Laches—Purchase pendente lite and with full notice—Valid Mortgage—Valid Lien—Marital rights—Effect upon the Rights of Husband and Wife, of the Sale of a parcel of land owned by the Wife, and the Purchase with the Proceeds thereof of another parcel.*

In 1869, a married woman owned in her own right, certain real estate which had been conveyed to her in fee, though not to her separate use, by deed dated the 2nd of January, 1860; learning that certain mill property was about to be offered at public sale, she determined to sell the property she then owned, and to purchase the mill property with the proceeds. She requested her husband to buy it for her, and he attended the trustee's sale

Keller *vs.* Keller, *et al.*

and bought the property at her instance on the 26th of June, 1869. He purchased it in his own name, signed the memorandum and was reported as the purchaser. The terms of sale were "one-third in cash on the day of sale or ratification thereof, the residue in one and two years, to be secured by notes of the purchaser with approved security." For the credit payments, the husband gave his notes with two sureties. The first payment was made about the 1st of September, 1869. The second instalment was paid in March, 1870. On the 22nd of October, 1870, the husband executed a mortgage of the property to M. L. D. to secure the sum of $600 due upon his single bill of the same date with the mortgage, payable one year after date, with interest. The wife did not join in the mortgage. The money for the last payment was borrowed from M. L. D., and to secure its payment a mortgage was executed to him by the husband and wife on the 3rd of May, 1872, the day after the deed was executed by the trustee, conveying the property to the husband. The purchase money for the property, except that which was borrowed from M. L. D. and secured by the second mortgage, was paid by the wife from the proceeds of her own property. The wife was not aware that the purchase had been made in the name of her husband, nor that the property had been conveyed to him until October, 1872, some five months after the deed had been executed. Soon after she discovered that the property had been conveyed to her husband, she filed her bill, praying that the deed to her husband might be set aside and annulled, and the property conveyed to her. After the bill had been filed the property was sold by the sheriff under a *fieri facias* issued against the husband, and M. L. D. became the purchaser, and applied for a writ of *habere facias possessionem.* Thereupon the complainant filed an amended bill repeating the charges of the original bill, stating the seizure and sale by the sheriff, and alleging that the purchaser had notice and knowledge of the complainant's equities, and praying for an injunction to restrain him from further proceedings to obtain possession of the property. HELD:

1st. That the purchase money for the property, except the amount borrowed and secured as aforesaid, having been paid by the wife out of the proceeds of the sale of her property, there arose a resulting trust in her favor, which she was entitled to enforce.

2nd. That the trust arose from the fact that the wife's money, and not that of the husband, the nominal owner, formed, at the time, the consideration of the purchase, and became converted into land.

3rd. That the fact that the husband purchased in his own name, that the notes to secure the deferred payments were signed by him, and the deed from the trustee was made to him, did not defeat the trust in favor of the wife.

Keller *vs.* Keller, *et al.*

4th. That there were no laches or delay or any acquiescence on the part of the complainant to defeat her rights.

5th. That the complainant was entitled to relief as against the purchaser at the sheriff's sale, he having purchased *pendente lite*, and with full notice of the complainant's equities.

6th. That the mortgage of the 3rd of May, 1872, executed by the complainant, was of course valid; and the previous mortgage dated the 22nd of October, 1870, executed by the husband was a valid lien and could be enforced against the land, the mortgagee at that time having no notice of the trust claimed by the complainant.

7th. That although the property conveyed to the complainant by the deed of the 2nd of January, 1860, was exempt from liabilities for the debts of her husband, his marital rights therein attached.

8th. That the land conveyed to the complainant on the 2nd of January, 1860, having been sold for the purpose of acquiring other lands in *lieu* of it, and the proceeds of the sale having been applied in paying for the land so purchased, the effect of the transaction was not to divest the rights of the wife, or to clothe the husband with the absolute title to the property thus acquired; but her rights remained unimpaired, and she was equitably entitled to have them protected, and to hold the same estate in the land purchased that she before possessed in the land sold.

APPEAL from the Circuit Court for Frederick County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, GRASON and ALVEY, J.

*Wm. P. Maulsby, Jr.* and *J. E. R. Wood,* for the appellant.

*Charles W. Ross* and *James McSherry,* for the appellees.

BARTOL, C. J., delivered the opinion of the Court.

The original bill of complaint in this case was filed by the appellant on the 7th day of December 1872; it alleged

that a deed executed by Creager trustee on the 2nd day of May 1872, conveying to Jacob Keller of J. (her husband) a parcel of land called "Harding's Mills" should have been made to the complainant; that her money paid for the land, and that the deed was in fraud of her rights; that she paid for the "Harding's Mill" property with the money received by her from the sale of her personal property, and certain real estate which was hers; the bill prayed that the deed to her husband might be set aside and annulled, and the property conveyed to the complainant.

After this bill had been filed, the Harding's Mill property was seized by the sheriff as the property of Jacob Keller of J. under a writ of *fieri facias* issued out of the Court of Appeals against Jacob Keller of J. on a decree recovered against him by Mary A. Keller. The property was sold by the sheriff, and Madison L. Day one of the appellees became the purchaser; and applied for a writ of *habere facias possessionem.* Whereupon the complainant on the 14th day of June 1873, filed an amended bill of complaint, repeating the charges of the original bill, stating the seizure and sale by the sheriff, and alleging that *Day*, the purchaser, had notice and knowledge of the complainant's equities, and praying for an injunction restraining him from further proceedings to obtain possession of the property. The injunction was issued. The answers of the defendants were filed, testimony taken, and the case was heard by the Circuit Court on a motion to dissolve the injunction. This appeal is taken from an order dissolving the injunction.

It appears from the testimony that in 1869, and for some years before, the complainant owned in her own right a farm in Frederick County containing about 124 acres; which had been conveyed to her in fee simple by Adolphus Fearhake attorney, by deed dated January 2nd 1860, for the consideration of two thousand dollars.

A good deal of testimony was adduced by the respondents for the purpose of impeaching the *bona fides* of the deed from Fearhake, by attempting to show that the complainant was without sufficient pecuniary means to make the purchase, and that these had been furnished by her husband, in fraud of his creditors; while on the other hand, much rebutting evidence was offered by the complainant to show in what way she had acquired the money by her own industry.

It is not important for us to go into an examination of the evidence on that subject; there is no creditor of Jacob Keller assailing that deed, who could have a right to impeach it. It was made long before the debt of Jacob Keller, upon which the *fi. fa.* in this case was issued, had been contracted, which was not till 1865 or 1866.

We consider it clearly established that in 1869 the appellant held in her own right an indefeasible title to the "Fearhake" farm. Learning that the "Harding Mill" property was about to be offered at public sale, she determined to sell the property she then owned, and to purchase the *Harding Mills* with the proceeds. The proof shows that she requested her husband to buy it for her, that he attended the trustee's sale, and bought the property at her instance, on the 26th day of June 1869. He purchased it in his own name, signed the *memorandum* and was reported as the purchaser. The terms of sale were "one-third in cash on the day of sale or ratification thereof, the residue in one and two years to be secured by notes of the purchaser with approved security." For the credit payments Jacob Keller gave his notes, with Henry B. Wilson and William G. Wilson as sureties. The first payment was made about the 1st of September 1869. The second instalment was also paid in March 1870. On the 22nd day of October 1870 Jacob Keller executed a mortgage of the property to Madison L. Day to secure the sum of $600, due upon his single bill of the same date with

the mortgage, payable one year after date with interest. The complainant did not join in this mortgage. Some delay occurred in making the last payment, and the money for that purpose was borrowed from Madison L. Day, and to secure its payment, a mortgage was executed to him by *Jacob Keller* and wife on the 3rd day of May 1872, the day after the deed had been executed by Creager the trustee, conveying the property to Jacob Keller.

We think it is conclusively proved that all the purchase money, except that which was borrowed from Day and secured by the second mortgage, was paid by the complainant from the proceeds of her own property.

The equity of the complainant rests upon the ground of a resulting trust. Trusts of this kind arise where upon the purchase of an estate, the conveyance of the legal title is taken in the name of one person, whilst the consideration is actually paid, at the time by another, in such case there is a resulting trust in favor of the party paying. "The payment of the money is the foundation of the trust, and may be proved by parol as before the Statute of Frauds." *Dorsey vs. Clarke,* 4 *H. & J.,* 551; *Hollida vs. Shoop,* 4 *Md.,* 465; *Greer vs. Baughman,* 13 *Md.,* 257; *Brooks vs. Dent,* 1 *Md. Ch. Dec.,* 523; *Sewell vs. Baxter,* 2 *Md. Ch. Dec.,* 448. It is held in all the cases, that the payment which is the foundation of the trust, "must be made out by plain, direct and unequivocal evidence." A careful examination of the testimony in this case has satisfied us that the purchase money, as before stated, was paid by the appellant out of the proceeds of the sale of her property. This being so, it follows that a trust arises in her favor which she is entitled to enforce. This trust does not rest upon any verbal contract between her husband and herself, by which it was agreed that the land should be purchased by him, for her benefit. Such a contract would be within the Statute of Frauds and null and void as decided in *Hollida vs. Shoop,* 4 *Md.,* 474.

Nor is it based upon the fact that after the purchase had been made by her busband, she advanced her money to enable him to pay the consideration. It is well settled that a "subsequent advance will not attach, by relation, a resulting trust to the original purchase." *Hollida vs. Shoop,* 4 *Md.*, 474; *Botsford vs. Burr,* 2 *Johns. Ch. R.,* 409. But as said by Chancellor KENT, and repeated in *Hollida vs. Shoop,* "the trust arises from the fact that her money, and not that of the nominal owner formed, at the time, the consideration of the purchase and became converted into land." This trust is not defeated by the fact that her husband purchased in his own name, that the notes to secure the deferred payments were signed by him, and the deed from the trustee made to him.

It appears from the proof that the complainant had directed him to buy the property for her; and that she was not aware that the purchase had been made in his own name; nor that the property had been conveyed to him until October 1872, five months after the deed had been executed. She so states in her testimony; to contradict her on this point, the appellees produced a deed executed by her and her husband on the 10th day of September 1872, conveying one and a half acres of the same land to Mary Johnson, in which the deed from the trustee to Jacob Keller is referred to; and it is also referred to in the mortgage executed by them to M. L. Day, dated the 3rd day of May 1872; but there is no evidence that she read either the deed or the mortgage, or that either of them was read to her. Mr. Urner, the attorney who drew the mortgage, states in his testimony that it was not read to Mrs. Keller in his presence. Soon after she discovered that the property had been conveyed to her husband, the complainant applied to counsel, and instituted these proceedings for the purpose of enforcing the trust; there have been no *laches* or delay or any acquiescence on her part, to impair or defeat her rights. It is clearly established by

the proof that Madison L. Day, had full notice of the complainant's equities before he became the purchaser at the sheriff's sale.

The original bill in this case had been filed, he purchased *pendente lite*, and it is proved in addition, that he had express notice of the complainant's claim, she is therefore entitled to relief against him, as purchaser, and it was error to dissolve the injunction. With respect to the mortgages held by Mr. Day, there is no ground for impeaching them, that of the 3rd of May 1872 executed by the complainant is of course valid; and the previous mortgage dated October 22nd 1870, executed by Jacob Keller is also in our opinion a valid lien, and may be enforced against the land; for the reason that he had *at that time* no notice of the trust claimed by the complainant.

It appears that the title of the appellant to the "Fearhake" farm was acquired before the adoption of the Code, the deed to her being dated January 2nd 1860, the estate was conveyed to her in fee, but not to her *separate* use. Under the law as it then existed, she had the capacity to take the legal seizin, the intervention of a trustee was not necessary, and the property thus acquired was exempt from liability for the debts of her husband; at the same time his marital rights therein attached. *Shindel vs. Shindel*, 12 *Md.*, 294; *Weems vs. Weems*, 19 *Md.*, 334; *Plummer and Wife vs. Jarman, et al.*, 44 *Md.*, 632. The land was sold in 1869, not for the purpose of being converted into money, but for the purpose of acquiring other lands, in lieu of it, to be held by her in the same manner as she had held the Fearhake farm, and the proceeds were immediately invested by her direction in the "Harding's Mills," thus effecting a mere exchange of one parcel of land for another. It is clearly proved that the identical money derived from the sale of the Fearhake farm was applied in paying for Harding's Mills. None of it was received by her husband, or passed through his hands,

Keller *vs.* Keller, *et al.*

except as her agent, for the purpose of being paid over immediately to *Creager* the trustee, and the testimony shows that it was so paid.

The effect of this transaction was not to divest the rights of the wife, or to clothe the husband with the absolute title to the property thus acquired; but her rights remained unimpaired, and she is equitably entitled to have them protected, and to hold the same estate in Harding's Mills as she before possessed in the Fearhake land.

A decree ought to be passed, directing Jacob Keller of J. to convey said property to the complainant, to be held by her in the same manner and of the same estate as she formerly held in the Fearhake land, and subject to the marital rights of her husband therein, in the same manner and to the same extent as they existed in the Fearhake land, before the same was sold and conveyed by Jacob Keller and wife in 1869. The said conveyance to the complainant, not to impair the claims of Madison L. Day under the mortgages held by him dated October 22nd 1870 and May 3rd 1872.

The order dissolving the injunction will be reversed, and the cause remanded for further proceedings in conformity to this opinion.

*Reversed and remanded.*

(Decided 22nd June, 1876.)