## JOHN S. GITTINGS, EXTR. OF ANNE M. WINTER, *vs.* HENRY WINTER.

*Liability of Husband For Property Received From His Wife to be Invested For Her—Evidence.*

The evidence in this case shows that a wife gave to her husband certain securities to be sold by him and reinvested for her benefit, and that the transaction was not an absolute gift by the wife to the husband, as alleged by him; and it is therefore held that her executor is entitled to demand the value of the securities from the executor of the surviving husband, when he fails to show what investments were made with the proceeds of the sale.

When a party admits that a memorandum of property delivered to him, made in the hand-writing of the owner, is correct, such memorandum is competent evidence in a suit against him to recover the value of such property.

Appeal from the Circuit Court for Howard County (JONES, C. J.)

The cause was argued before FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Bernard Carter* and *Julian J. Alexander*, for the appellant.

*Arthur W. Machen* and *Arthur W. Machen, Jr.*, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This proceeding was instituted on the 11th day of June, 1903, in the Circuit Court for Howard County, by the plaintiff, as executor of the last will and testament of Annie M. Winter, deceased, against the defendant, Henry Winter, the surviving husband, to recover the proceeds of certain securities alleged to belong to the appellant's testatrix at the time of her death and also for an injunction to restrain its disposition, pending the decision.

Mrs. Winter died on the 10th day of November, 1902, leaving a last will and testament and leaving the defendant, a surviving husband. John S. Gittings, the plaintiff in the case, and a granddaughter, Eleanor A. Moale, a daughter of a deceased child, are children by a previous marriage to William Gittings. These are her only heirs at law, and are the legatees mentioned in her will.

The defendant died after the appeal in the case, and his executors are the present appellees.

The property in controversy is derived from the sale of certain bonds and stocks which belonged to the wife at the time of her marriage in 1869 to Mr. Winter, but which were subsequently sold by him and invested in his own name, while in the State of California.

The property is claimed on the part of the appellant, as property belonging to the testatrix and which had been placed in her husband's hands to be sold, and reinvested for her and to belong to her. And should at her death, belong to her heirs.

On the other hand, the appellees contend, that the stocks and bonds belonging to the wife at the time of her second marriage, and which were afterwards sold, were absolute and unconditional gifts to the husband by the wife, and were not coupled with any condition or agreement that he was to will it, at his death to his wife, or to her heirs, or to hold the property otherwise than as his own.

The facts out of which the controversy arose are fully disclosed by the pleadings and the evidence and may be thus condensed and stated. By the second paragraph of the bill it is alleged, that a few days after the death of the testatrix the defendant in a conversation with the plaintiff, who had then qualified, as the executor of the estate, inquired whether the testatrix had left amongst her papers any memorandum of certain stocks and bonds which he had sold for her many years ago and reinvested the proceeds thereof in Calfornia for her; that such a memorandum existed and the plaintiff would find it. He further stated, that the testatrix had placed in his hands certain securities consisting of bonds and stocks which belonged to her amounting to about thirty thousand dollars to sell and reinvest for her; that he had sold these securities for greenbacks and with the greenbacks had bought gold and with gold had purchased securities in California, and held them in his own name. He also stated that the testatrix had often reminded him that the investments were hers and should be returned after her death to her heirs; that he admitted the securities were hers and that he had promised her he would embody a provision in his will securing the reinvestment of the property made by him for her at his death. And that he afterwards repeatedly admitted to him, that the reinvestments of the property were for the testatrix.

In the second paragraph of this bill it is further alleged that after the conversation above referred to, the plaintiff did find the memorandum, amongst the papers of the testatrix and in her own handwriting; that it appears that the property sold consisted of 64 shares of the stock Camden and Amboy Railroad Company; $10,000 of Missouri State bonds; $4,000 of

bonds of the Pittsburgh, Fort Wayne and Chicago Railroad; $2,000 of bonds of the Marietta and Cincinnati Railroad; 8 shares of the capital stock of the Northern Central Railroad, and 93 shares of the stock of the Lehigh Valley Railroad, and that these bonds and stocks sold for the sum of $29,000.

The fourth and fifth paragraphs of the bill further charge that in the month of February, 1903, in a conversation with the defendant, the plaintiff stated that he had found the memorandum of stocks and bonds heretofore mentioned, and presented to him a list of the securities as taken therefrom. The defendant examined the paper, acknowledged and identified the securities so sold, and said that he had a similar memorandum among his papers; that the securities were sold for greenbacks and the greenbacks turned into gold, so that the securities he purchased for her were the proceeds of the sale of securities referred to in the paper shown to him and identified by him. That he subsequently applied to the defendant for a written acknowledgment that the investments had been made for the testatrix out of her property and he would turn them over to her heirs, at his death, but received no reply to this application.

The bill also charges in the sixth and seventh paragraphs thereof, that the testatrix frequently stated to the plaintiff in her lifetime, that the defendant had a large amount of her property in his hands, and did not pay the interest thereon to her, but had applied all the income and dividends to his own use, since the property was placed in his hands in October, 1869. That by the agreement between the defendant and testatrix as to these investments, he could only hold them for the term of his natural life and cannot claim any portion of her estate as her surviving husband.

The special prayer of the bill, in addition to the usual prayer for general relief, is, that the defendant should make, sign and deposit with the Clerk of the Court, an inventory of the specific investments of the testatrix property so made by him; that he bring the securities into Court to be dealt with and disposed of by the Court; that he be restrained by injunc-

tion from selling or disposing of these securities, and that a decree be passed, declaring that the defendant is entitled to no interest in the securities other than the right to receive the income and dividends during his life, and that he has no interest in the residue of the testatrix property, as surviving husband.

The defendant, on the 6th of August, 1903, answered the bill, wherein he admits that he received from his wife all the securities herein mentioned, except the eight shares of Northern Central Railroad stock; that with the knowledge of his wife he sold the securities for greenbacks and converted these into gold; that the amount realized from the sale of the stocks and bonds was $26,310.55 in currency and $21,027.83 in gold. He avers, that the stocks and bonds were an unconditional gift to him from his wife, after their marriage and denies that it was accompanied by an agreement that he was to will or to hold the property otherwise than as his own.　He also avers, that his wife did not in her lifetime claim or assert any right or claim to the proceeds of the sale of the stocks and bonds or the investments thereof; that be held the investments in his own name and as his own property, with her knowledge, and without any dispute, question or claim thereto by her. He also denies having had the conversations with the plaintiff, as alleged in the bill, and further denies that he ever admitted that the investments were made for his wife's benefit or that he promised to hold them for the benefit of the heirs of the testatrix.　He further avers, that nothing that occurred between himself and his wife can legally or equitably defeat his right, as surviving husband to his legal estate in the property owned by his wife, at the time of her death.　And he relies upon and claims the benefit of the statute of limitations, as a bar to the plaintiff's suit, and insists that the plaintiff is equitably estopped and precluded from prosecuting the same by the laches of the defendant's testatrix.

The Circuit Court for Howard County sustained the defendant's contention and from a decree dissolving an injunction which had been previously granted and dismissing the plaintiff's bill, this appeal has been taken.

Md.]

It appears, then, from the pleadings in the case, that the object of the bill is, in substance, to declare the proceeds of certain securities, which were derived from a sale of the wife's property, conceded to be her property at the time of her second marriage, but which was subsequently sold and reinvested by the husband, in his own name, and held by him at the time of his death, to be the property of the plaintiff's testatrix, and to belong to the plaintiff as the legal representative of the wife.

The principal dispute in the case relates to questions of fact, and the proper construction to be given a memorandum in the handwriting of the testatrix, and found by the plaintiff among her papers after her death.

There were but three witnesses in the case, two on the part of the plaintiff and one for the defendant, he having been examined in his own behalf.

The memorandum of the stocks and bonds, upon which the claim of the appellant, partly rests, is dated December, 1891, and is as follows:

"Sold by Mr. Winter in 1869, for par,
64 shares Camden and Amboy.
10,000 bonds Missouri State bonds.
4,000 Pittsburg, Fort Wayne and Chicago.
2,000 Marietta Cincinnati bonds.
8 shares Northern Central R. R.
93 Lehigh Valley R. R.
It brought 29,000 when sold.
List of property which Mr. Winter sold belonging to me given him by me, Oct., 1869. Copy taken from Mr. Winter's Acc. Book marked "private."
Signed,                                        Annie M. Winter.

On the opposite side of the paper is an additional entry, also in the handwriting of the testatrix, to this effect, "My property given into the hands of my husband, Henry Winter, Oct. 1869. Sold by him for $29,000."
Signed,                                        Annie M. Winter.

And immediately under the foregoing and in the same handwriting, is the following:

"At Morgan Bankers, New York, hold for Mr. Winter his securities as follows:

10,000 5 per cent bonds of the Northern Pacific R. R.

20,000 of the Atchinson, Iopeka and Santa Fe R. R. bonds from letter from Morgan Feb. 28th, 1896."

It will be thus seen, as the question raised on this branch of the case is one of fact, and is to be solved by the evidence disclosed in the record, it will be necessary for us to quote at length, from the testimony of the witnesses.

Mr. John S. Gittings, the plaintiff in the case, testified that his mother died on the 10th of November, 1902, and that letters testamentary were granted to him on her estate; that subsequently he had the following conversation with the defendant. "He asked me a few days before I had examined her box in the Mercantile Trust Company, if I had found any memorandum of certain stocks and bonds formerly belonging to her which he had sold for her and reinvested for her in California." "I told him I hadn't found any, but she had mentioned many times in her lifetime the fact that he had reinvested *that* money for her out of the proceeds of those securities, and he then said, "You will find that memorandum somewhere among her papers;" "she has got it I know." I asked him then where he thought I would be likely to find it and he said "in that desk," "pointing to her private desk that stood by the door, and a few days afterwards I sent over and got some large articles of furniture belonging to her, the desk being among them, and examining the desk, going over the papers there, the bills and things of that kind, receipts and so forth, I found this memorandum, which is marked Exhibit A." He said further, on that occasion, that those securities were in currency, greenbacks, and that the greenbacks were sold and turned into gold, and that with this gold he reinvested this money, the proceeds of those securities for her in California, and he mentioned some stock; I think there was Spring Valley; I think that was mentioned or San Francisco Gas and Water; I think they were the names of them; that the amount of the securities was between $28,000 and $29,000, at least, under $30,000. He also said that mother had often spoken to him in her lifetime about putting these

securities in such shape that they would go to her heirs when she died; *it was her property* and he had promised her that he would make or fix it so in his will that it would revert to her two children or their heirs, and he seemed anxious to make a will at that time; he said that he had large property in California and under the laws of California he was afraid his son might inherit, and he did not want him to inherit and he had talked his will matter over slightly, but he told me certainly that he intended to make that matter straight, that that property was hers and should go to her children, that he had so promised." He further testified, that he had another interview with the defendant in February, 1903, when his daughter, Miss Dorothy Gittings, was present, and that he asked him at that interview if he remembered asking me if I had found a memorandum of securities of mother's in her box, and he said he had asked me that," and "I told him I had found it and I showed him a list of the securities and gave him the paper and he examined it carefully, went over it and read them off one by one and identified them and stated that those were the securities, that he went off on the old story, how he had sold them for greenbacks and turned the greenbacks into gold and with the gold he had invested in these California securities for mother; that was the second or third time he had repeated the story to me, but he identified these securites from the copy I showed him of that list, Exhibit No. 2."

Miss Dorothy Gittings testified that she was present in February, 1903, when the conversation took place between the plaintiff and defendant, about her grandmother's property and upon being asked to state what took place, said, "Father said to Mr. Winter, "You asked me if mother had left a memorandum amongst her papers of these stocks and bonds," and Mr. Winter said "he had asked the question and father showed him a list of the stocks and bonds and he went over them and identified them and said he had a similar memorandum among his papers." He then stated that he had sold these for greenbacks and turned the greenbacks into gold and the securities he purchased for her, California securities; I think

they were, with the proceeds of the sale. He also said that he had invested them in California securities for her."

The defendant, Mr. Winter, testified in his own behalf and was the only witness called on the part of the defendant. He stated in substance, the bonds and stocks were an uncondi-. tional gift from his wife, and that she never in her lifetime asserted or claimed any right to the proceeds, or to any investments made by him. He further testified that his wife gave him the securities mentioned in the memorandum except the 8 shares of Northern Central Railroad stock; that he took them from his wife and handed them to Duncan, Sherman and Company, of New York, who sold them and invested the proceeds in gold; that the securities amounted to between $25,000 and $26,000, and sold for $21,000 in gold; that he subsequently invested the proceeds of the securities in California and took the investments in his own name; that he gave at the time of the sale $500 of the proceeds of the securities to. Mrs. Winter. He further denied the conversation testified to by Mr. Gittings in relation to the memorandum of stocks and bonds sold by him, and also as to all the admissions and declarations alleged to have been made by him in the several interviews with Mr. Gittings.

Now upon the facts as thus disclosed and set out, we are of the opinion that the plaintiff is entitled to the relief sought by his bill, and it therefore becomes unnecessary for us to review the remaining testimony, except in so far as it may reflect upon the conclusion we have reached, in the case.

The principle of law applicable to the facts of this case has been settled in this State, by a number of cases.

In *Keller* v. *Keller*, 45 Md. 269, where property had been purchased by the husband, with funds derived from the sale of the wife's property, and invested by her direction in other property, and the deed or conveyance was made in the husband's name, this Court held, that the effect of the transaction was not to divest the rights of the wife or to clothe the husband with the absolute title to the property thus acquired but her rights remained unimpaired and she was equitably entitled

to have them protected and to hold the same estate in the property purchased as she before possessed in that from which the funds were derived.

In *Schroeder* v. *Loeber*, 75 Md. 195, the wife advanced money to her husband which he promised to invest for her benefit in the erection of houses on his land. The Court on a bill in equity against the husband decreed, that the wife was entitled to receive the amount of money so paid him. JUDGE BRYAN, in the course of the opinion said, It is distinctly shown, that the money was not given to her husband, but that her interest in it was retained and that it was their object to secure it by this investment. The contract of a husband with his wife in reference to her separate property can be enforced against him by her in equity when properly established.

The case of *Edelen* v. *Edelen*, 11 Md. 415, and the later cases cited and relied upon by the appellees are clearly distinguishable from this. They rest upon an entirely different principle of law, and were decided upon dissimilar facts.

In the case at bar, it is established by undisputed evidence, that Mrs. Winter held in her own right at the time of her second marriage in 1869, the bonds and stocks from which the funds in dispute were derived.

It appears from the memorandum in her handwriting which was found by Mr. Gittings among her private papers, after her death that she regarded the securities, as her property. She endorsed upon the back of the paper containing a list of the securities sold by him, "my property, given into the hands of my husband, Henry Winter, Oct. 1869, sold by him for $29,000," and as evidence of the fact, signed her name to the paper.

The words "given him by me" in the entry on the paper in her handwriting, and signed by her, can have, we think in the light of all the evidence in the case, but one meaning and construction and that is, the securities entered on the list taken from Mr. Winter's account book, and referred to by her, "were given him" as her property simply to be sold and reinvested for her, and not as an absolute gift.

Mr. Gittings testified, that Mrs. Winter had frequently men-

tioned to him in her lifetime the fact that he had reinvested the money for him out of the proceeds of the stocks. And in this, he is corroborated by the testimony of his daughter, Dorothy, who stated, that she knew that her grandmother had spoken of the money, and that she had heard her speak of the stocks and bonds, and that her grandmother said, that she gave them to Mr. Winter to invest for her and he was to make them good to her heirs in his will.

But aside from this, we have the admissions and declarations of the defendant himself, made to the plaintiff on several occasions after the death of the testatrix, that he sold the securities for his wife, reinvested the proceeds for her in California and the reinvestments were her property ; that the proceeds when sold amounted to about $29,000; that the reinvestments were taken in his own name, but he had promised his wife that he would make or fix it so that the property would revert to her heirs.

It is also conclusively proved by Miss Gittings that at an interview between the plaintiff and defendant as late as February, 1903, the latter examined the list of securities showed him by the former, and identified them and said he had a similar memorandum among his papers. The defendant also admitted that he had sold them, and had invested them in California securities for his wife.

In view, then, of the facts as thus stated, we do not deem it necessary to further comment upon the testimony, because we think it is clearly established, that the reinvestments of the wife's property by the husband as heretofore set out, do not belong to the appellees, but are the property of the plaintiff as her legal representative.

As to the exceptions to the admissibility of testimony filed by the parties, we need only say that there was error in the ruling of the Court below, in excluding the memoranda, Exhibit A and Exhibit No. 2, as evidence for the plaintiff.

The defendant identified the memoranda and examined the list of securities therein given, and stated to the defendant and to Miss Gittings that it contained the securities belonging to

his wife which he had sold, and that he had a similar memorandum among his own papers. He thus adopted the paper and made its contents evidence in the case.

The law as to the competency of witnesses to testify in actions or proceedings by or against executors in which decrees may be rendered for or against them, under the Act of 1902, ch. 495, has been settled by this Court in the recent cases of *Duckworth* v. *Duckworth*, 98 Md. 92, and *Justis v. Justis*, 99 Md. 69, so we forbear any further comment thereon.

As to the question of the measure of recovery in the case, we think that the proof shows that the amount realized from the securities when sold in New York was about $29,000. The memorandum in the handwriting of Mrs. Winter shows that they brought $29,000. The defendant, according to the testimony of the plaintiff, admitted in the several conversations with him, that they sold for about the amount here indicated. The defendant in his testimony states that they brought in currency between $25,000 and $26,000, but when reduced to gold, he realized over $21,000.

We agree however, with the plaintiff's contention as stated in his brief, that as the defendant did not invest these securities in his wife's name so that they could be easily identified, and has failed to say in his testimony in what they were actually invested, and at what price, it is but fair that he should be charged for the currency price in New York when the securities were sold ; and this amount should be ascertained, as $29,000.

The remaining question raised by the pleadings relates to the defendant's rights in the testatrix property as surviving husband. The Court below did not pass upon this question and the appellees in their brief contend that it cannot be determined in this suit ; that the record contains none of the facts necessary for its determination and that the question is involved in a pending proceeding in another Court. We, therefore, need not discuss this question.

For the reasons given we are all of the opinion that the decree of the Circuit Court for Howard County, dated the 22nd

day of September, 1904, dissolving the injunction and dismissing the plaintiff's bill of complaint, must be reversed and the cause remanded for further proceedings in conformity to this opinion.

*Decree reversed and cause remanded with costs.*

(Decided April 7th, 1905.)